WILLIAM J. NOLAN III AND LOUISE C. HEMPHILL-NOLAN, PETITIONERS V.
VILLAGE OF MARVIN, A NORTH CAROLINA MUNICIPALITY, RESPONDENT

No. 488A05

(Filed 27 January 2006)

### Cities and Towns— involuntary annexation—services extended— insufficient

The Village of Marvin did not substantially comply with statutory procedures for an involuntary annexation because the services provided simply filled needs created by the annexation itself, without conferring significant benefits on the annexed property owners and residents. Although the administrative services which the Village proposed to extend were the only services provided to existing residents, N.C.G.S. § 160A-35(3) is grounded in a legislative expectation that the annexing municipality possesses meaningful services to extend to the annexed property.

Justice EDMUNDS dissenting.

Justice PARKER joins in this dissenting opinion.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 172 N.C. App. 84, 615 S.E.2d 898 (2005), affirming an order affirming annexation entered 2 June 2004 by Judge Albert Diaz in Superior Court, Union County. Heard in the Supreme Court 13 December 2005.

*The Brough Law Firm, by Robert E. Hornik, Jr., for petitioner-appellants.*

*Parker, Poe, Adams & Bernstein L.L.P., by Anthony Fox and Benjamin R. Sullivan, for respondent-appellee.*

WAINWRIGHT, Justice.

Plaintiff property owners challenge the involuntary annexation of 320 lots in Union County by the Village of Marvin. Both the trial court and Court of Appeals upheld the Annexation Ordinance, which was adopted by the Village of Marvin Council on 24 July 2003. Plaintiffs appeal to this Court based on the dissent at the Court of Appeals.

This Court must determine (1) whether the Village of Marvin substantially complied with N.C.G.S. sections 160A-33 to 160A-42, which prescribe the statutory procedure for annexation by cities of less

than 5,000 residents; and (2) if the Village of Marvin has not substantially complied, whether plaintiffs will suffer material injury because of the noncompliance. In so doing, we consider whether the applicable annexation statutes require an annexing municipality to extend a threshold (quantitative) level of public services to the annexed territory.

We determine that N.C.G.S. § 160A-35, which obligates the annexing municipality to extend existing public services to the annexed area, and N.C.G.S. § 160A-33, which is a "declaration of policy" supporting annexation by cities of less than 5,000 residents, must be read *in pari materia.* We hold that N.C.G.S. sections 160A-33 and 160A-35 require meaningful extension of public services to annexed property. Because the Annexation Ordinance adopted by the Village of Marvin does not provide for meaningful extension of services to the 320 lots subject to annexation, we find that the Village of Marvin has not substantially complied with statutory procedure and that plaintiffs will suffer material injury if annexation proceeds. Accordingly, we reverse the opinion of the Court of Appeals.

Annexation is the process by which a municipality expands its corporate limits to include outlying geographic areas. N.C.G.S. § 160A-36 (2003). Municipalities receive their power to annex by delegation of legislative authority from the General Assembly. *Huntley v. Potter,* 255 N.C. 619, 627, 122 S.E.2d 681, 686 (1961) (Annexation of territory to a municipal corporation is a power conferred by the legislature and such power must be exercised " 'in strict accord with the statute conferring it.' "). Involuntary annexation is initiated by a municipality and is not subject to referendum; however, a municipality may involuntarily annex property only if the property meets strict geographical and developmental criteria set forth in N.C.G.S. § 160A-36 and the municipality follows the detailed procedures set forth in N.C.G.S. § 160A-35 and N.C.G.S. § 160A-37. These procedures include notice to the affected community, public meetings, verification that the property is eligible for annexation, and planning for the extension of existing public services to the area to be annexed. N.C.G.S. §§ 160A-35, -36, -37 (2003). This Court has previously held that municipal services must be extended to newly annexed areas in a nondiscriminatory manner, meaning that annexed residents and property owners must receive substantially the same services that existing village residents and property owners receive. *Greene v. Town of Valdese,* 306 N.C. 79, 87, 291 S.E.2d 630, 635 (1982); *see also* N.C.G.S. § 160A-37(h) (2003) (granting a cause of

action to any resident or property owner who does not receive services "on substantially the same basis and in the same manner as such services were provided within the rest of the municipality prior to the effective date of annexation").

On 11 June 2002, the Village of Marvin Town Council passed a Resolution of Consideration pursuant to N.C.G.S. § 160A-37(i), identifying 324 lots on 467.71 acres contiguous to the Village of Marvin, which the Village intended to consider for annexation.[1] On 25 April 2003, the town council adopted a Resolution of Intent pursuant to N.C.G.S. § 160A-37(a), further describing the area under consideration, setting dates for a public informational meeting and a public hearing, and making publicly available a report containing plans to extend nine categories of municipal services to the annexed area as required by N.C.G.S. § 160A-35(3): police protection, fire protection, streetlights, solid waste removal, street maintenance, administrative services, water and sewer services, animal control, and parks and recreation. The report also contained a statement of financial impact, showing how the proposed annexation would affect the Village of Marvin's finances.

With respect to public services, the Annexation Report, adopted by the Village of Marvin on 25 April 2003 and amended on 24 July 2003, shows that the Village provides only one of the nine listed categories of municipal services to its residents. That category is administrative services. According to the report, "[t]he Village's administrative staff consists of the Village Administrator, Village Clerk, and Tax Collector. All work on a part-time basis (12 hours [per person] per week.). . . . The Village also contracts for planning services, engineering services, an auditor, and an attorney." The eight remaining services are provided to Village of Marvin residents by the State, Union County, volunteer organizations, or not at all. For example, streets are maintained by the North Carolina Department of Transportation, water and sewer services are provided by the Union County Public Works Department or by privately owned wells and septic tanks, and fire protection services are provided by the Wesley Chapel Volunteer Fire Department. At the time this report was amended, the Village of Marvin lacked a contract for police protection.

With respect to Village finances, the Annexation Report states that the Village of Marvin administrative staff will work approxi-

---

1. On 24 July 2003, the Village of Marvin adopted an amended Annexation Report in which the area proposed for annexation was reduced to 320 lots on 465.895 acres.

mately thirty-three percent more hours following annexation. Planning services, engineering services, and costs for reproducing maps and ordinances are also expected to increase. Thus, the Village of Marvin estimates that it will incur $14,240 in additional annual administrative costs as a result of the annexation. However, the Annexation Report shows zero additional estimated costs for the remaining eight categories of public services, as these needs will continue to be met by other entities. The Village also estimates that its total annual revenues will increase by $80,395 from collection of *ad valorem* taxes, utility franchise taxes, local option sales tax, cable TV franchise tax, motor vehicle taxes, and development fees. In the first year, the Village of Marvin estimates additional net revenue of $60,155 from the annexed property owners and residents.

At the public informational meeting held by the Village of Marvin town council on 10 June 2003, "[s]everal questions were raised by the citizens in the audience regarding the additional cost of a Marvin tax with no corresponding addition of town services provided." Additional questions were asked "requesting an explanation from the council as to the reason for the annexation." Village representatives refused to answer these inquiries and closed the public informational meeting, notwithstanding the mandate of N.C.G.S. § 160A-37(c1) that at the public informational meeting all residents of the municipality and of the territory to be annexed "shall be given the opportunity to ask questions *and receive answers* regarding the proposed annexation." (Emphasis added.)

Plaintiffs challenged the Annexation Ordinance adopted on 24 July 2004 by the Village of Marvin, filing a petition for review in Union County Superior Court pursuant to N.C.G.S. § 160A-38. In their petition, plaintiffs allege that the Village of Marvin failed to substantially comply with the statutory procedure for annexation because the Annexation Report reveals that no new services will be extended to the property to be annexed; however, residents and property owners will be subject to additional real property tax liability. Plaintiffs further contend that residents were not given an adequate opportunity to ask and receive answers to questions at the public informational meeting held on 10 June 2003. The Village of Marvin responds that it will provide additional administrative services to the area to be annexed and that the sole statutory requirement is that it extend these services in a nondiscriminatory manner. Thus, the Village of Marvin, which provides minimal services to its existing residents, may annex and tax plaintiffs' property simply by offering

substantially similar minimal services to plaintiffs. Both the trial court and the Court of Appeals upheld the annexation ordinance. We reverse.

Section 160A-35(3) of the North Carolina General Statutes directs an annexing municipality to include "[a] statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation" in an Annexation Report. The statute then lists categories of municipal services that the Annexation Report must address: police protection, fire protection, solid waste removal, street maintenance, and water and sewer services. N.C.G.S. § 160A-35(3). The Annexation Report adopted by the Village of Marvin also addresses administrative services, streetlights, animal control, and parks and recreation. Because the Village of Marvin provides only administrative services to its existing residents, the Village argues that extending those services, which are generally provided by the Village Administrator, Village Clerk, and Tax Collector, fulfills the requirement of N.C.G.S. § 160A-35(3) to provide municipal services in a nondiscriminatory manner. We agree that services must be provided on a (qualitative) nondiscriminatory basis; however, we also conclude that N.C.G.S. § 160A-35(3) is grounded in a legislative expectation that the annexing municipality possesses meaningful (quantitative) services to extend to the annexed property.

The North Carolina General Assembly enacted statutory procedures for involuntary annexation in 1959, following the completion of two reports by the Municipal Government Study Commission. N.C.G.S. §§ 160A-37, -49 (2003). The Commission was convened by the Assembly "to make a detailed and comprehensive study of the problems of municipal government in North Carolina which may include . . . [t]he procedures, powers, and authority which are granted by the General Assembly and are available to municipalities that govern and limit the ability of municipal government to provide for orderly growth, expansion, and sound development." J. Res. 51, Sec. 2, 1957 N.C. Res. 1705, 1705 (June 2, 1957). In its final report, the Commission recommended involuntary annexation as a method for promoting "soundly-governed, financially stable, attractive-to-live-in cities, with a high quality of municipal services." N.C. General Assemb., *Supplementary Rep. Municipal Government Study Commission* 6 (1959). The Commission stated its "principal[] concern" as "recommending a procedure for needed extension of the corporate limits of cities that does give necessary protec-

NOLAN v. VILLAGE OF MARVIN

[360 N.C. 256 (2006)]

tion to the rights of property owners." *Id.* In particular, the Commission noted:

> When a city expands its boundaries, either to take in developed land or land ripe for development, it must be prepared to provide services of a quality needed where population density is relatively high. And if the land taken in does not receive such services, at the time of annexation or very shortly thereafter, the impact of municipal taxes discriminates against the landowner.

N.C. General Assemb., *Rep. Municipal Government Study* 11 (1958).

Thereafter, the North Carolina General Assembly codified "as a matter of State policy:"

> . . . .
>
> *(2) That municipalities are created to provide the governmental services essential for sound urban development and for the protection of health, safety and welfare in areas being intensively used for residential, commercial, industrial, institutional and government purposes or in areas undergoing such development;*
>
> *(3)* That municipal boundaries should be extended, in accordance with legislative standards applicable throughout the State, to include such areas *and to provide the high quality of governmental services needed therein for the public health, safety and welfare; and*
>
> . . . .
>
> *(5) That areas annexed to municipalities in accordance with such uniform legislative standards should receive the services provided by the annexing municipality in accordance with G.S. 160A-35(3).*

N.C.G.S. § 160A-33 (2003) (emphasis added).

We determine that N.C.G.S. §§ 160A-35 and 160A-33 are *in pari materia.* The primary purpose of involuntary annexation, as regulated by these statutes, is to promote "sound urban development" through the organized extension of municipal services to fringe geographical areas. These services must provide a meaningful benefit to newly annexed property owners and residents, who are now municipal taxpayers, and must also be extended in a nondiscriminatory fashion. Our decision does not require an annexing

municipality to provide all categories of public services listed in N.C.G.S. § 160A-35(3). We conclude only that the level of municipal services proposed in the Annexation Report prepared by the Village of Marvin is insufficient. Those part-time administrative services, such as zoning and tax collection, simply fill needs created by the annexation itself, without conferring significant benefits on the annexed property owners and residents.

Because the Annexation Ordinance adopted by the Village of Marvin does not provide for meaningful extension of municipal serv-ices to the 320 lots subject to annexation, we find that the Village of Marvin has not substantially complied with the statutory procedures set forth in N.C.G.S. sections 160A-33 to 160A-42. *See id.* § 160A-38 (setting forth the procedure and grounds for appeal from an Annexation Ordinance); *Huntley*, 255 N.C. at 627, 122 S.E.2d at 686 (a challenged Annexation Ordinance and Annexation Report must show "*prima facie* complete and substantial compliance" with the statutorily prescribed procedure). We further find that plaintiffs will suffer material injury, in the form of municipal taxes, if annexation proceeds. *See* N.C.G.S. § 160A-38 (granting the right to appeal an Annexation Ordinance to any person who "will suffer material injury by reason of the failure of the municipal governing board to comply with . . . [statutory] procedure.") Accordingly, we reverse the opinion of the Court of Appeals.

REVERSED.

Justice EDMUNDS dissenting.

The majority's resolution of this case improperly interprets the applicable statutes. Accordingly, I respectfully dissent.

A municipality that is annexing a neighboring area must provide a report that includes "[a] statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation." N.C.G.S. § 160A-35(3) (2005). The trial court found as fact that the Village of Marvin's Annexation Report and Amended Annexation Report furnished information as to the services currently provided by the Village. The trial court went on to find as a fact that, after annexation, the area to be annexed would receive "services on substantially the same basis and in the same manner as services received elsewhere in the [municipality]." Based on these findings,

the trial court concluded as a matter of law that the Village had "satisfied all statutory requirements regarding the provision of services to" the area to be annexed.

Although we review the trial court's conclusions of law *de novo*, the majority appears to accept that the Village complied with the facial requirements of N.C.G.S. § 160A-35(3). The public policy set out in N.C.G.S. § 160A-33 and quoted by the majority requires no more than that the area to be annexed receive the same services as are provided within the annexing municipality. Nevertheless, the majority now relies on N.C.G.S. § 160A-33 to add a gloss to N.C.G.S. § 160A-35(3) to require that the annexing municipality provide public services that exceed to a "meaningful" degree the services the area to be annexed is already receiving.

While I fully sympathize with the plaintiffs' frustration at finding themselves involuntarily annexed, "[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). This Court does not have authority to add requirements to the statute. Plaintiffs' remedy lies with the General Assembly.

Justice Parker joins in this dissenting opinion.