BETTIE NORWOOD; MELISSA Y. NORWOOD; NORWOOD FAMILY LIMITED PARTNERSHIP; SUGAR VIEW REAL ESTATE INVESTORS, LLC; MANNING GAMBRELL, AND WIFE, MARTHA GAMBRELL; DONNIE A. IVERSON AND WIFE, CATHY S. IVERSON; AND KATHLEEN J. BUNNELLS, PETITIONERS v. VILLAGE OF SUGAR MOUNTAIN, A NORTH CAROLINA MUNICIPALITY, RESPONDENT

No. COA07-1402

(Filed 21 October 2008)

1. **Cities and Towns— annexation—original report—eighteen-acre tract shown—identification of included one-acre tract**

    Respondent municipality's original report identifying proposed areas for annexation sufficiently identified a one-acre tract that was ultimately annexed even though this one-acre tract was included on the map in a larger eighteen-acre tract and was not specifically carved out and identified on the map as a one-acre tract. The municipality could omit property described in its original report from the property it ultimately annexed.

2. **Cities and Towns— annexation—recorded property lines or streets—new municipal boundaries**

    The trial court erred in an annexation case by finding and concluding that respondent did not use recorded property lines or streets in establishing the new municipal boundaries for the pertinent one-acre Norwood tract in violation of N.C.G.S. § 160A-36(d) because: (1) N.C.G.S. § 160A-36(d) contains no express requirement that the property lines utilized by a municipality must be immutable or the result of a formal, county-approved subdivision of land in order to qualify as recorded property lines; (2) the evidence showed respondent Village did use property lines that had been recorded by the Norwood family, the Village specifically utilized the property description contained in a deed, and the tract at issue was contained in the recorded plat; (3) even though on 12 June 2006 the Norwood family revised its plat and eliminated any references to the pertinent tract, the revi-

sion and recordation occurred well after the adoption of the annexation ordinance and was thus unavailable to the Village at the time of the annexation; (4) the Village's use and reliance on the then-existing recorded deed and plat, both of which were consistent with the actual description of the one-acre tract, complied with the mandates of N.C.G.S. § 160A-36(d); (5) the boundary lines derived from the street, the separately-owned commercial property, Ms. Norwood's residential property, and her mother's residential property met the requirements of N.C.G.S. § 160A-36(d); (6) even assuming arguendo that the line derived from the voluntarily annexed tract was not a recorded property line within the meaning of the statute, the record still supported that the Village complied with the statute; and (7) the recorded line that the Village used from the voluntarily annexed tract was already part of the pre-existing municipal boundary, and thus the line did not constitute a new municipal boundary within the meaning of the statute.

**3. Cities and Towns— annexation—subdivision test—classification of entire tract as commercial**

Respondent municipality could properly classify an entire 5.12 acre tract as commercial for purposes of the subdivision test set forth in N.C.G.S. § 160A-36(c), although a plat presented by petitioners divides the 5.12 tract into a 1.28 acre commercial tract, a .47 acre wooded tract, and a 3.36 acre wooded tract, where respondent's annexation reports and its subdivision test calculations were based upon county tax maps and actual observations of the properties made by a certified land surveyor; neither the county tax map nor the deed divided the property into separate tracts; the plat presented by petitioners did not exist at the time of annexation; the only actual use of the property was commercial; the wooded parts of the property cannot be developed for any purposes other than possibly serve the commercial facilities; and access to the 3.36 acre wooded parcel was provided by the 1.28 acre commercial tract.

**4. Cities and Towns— annexation—violation of subdivision test—remand**

The remedy for a municipality's alleged violation of the subdivision test was not to declare the annexation ordinance null and void but was to remand to allow the municipality to amend the annexation boundaries.

**5. Cities and Towns— annexation—contiguity requirement— previously annexed shoestring**

A municipality's annexation of a tract of land did not violate the contiguity requirements of N.C.G.S. § 160A-36(b) and N.C.G.S. § 160A-41(1) even though the annexed land abutted a ten-foot "shoestring" strip of land running along a highway where the shoestring, along with a larger tract, had been voluntarily annexed more than ten years earlier; the tract of land in question was contiguous to the municipality at the time it was annexed; and the vast majority of the tract at issue directly abuts the previously annexed larger tract and not the shoestring.

**6. Cities and Towns— annexation—meaningful extension of municipal services**

The trial court erred in an annexation case by finding and concluding that respondent municipality violated N.C.G.S. §§ 160A-33 through 42 with regard to its plans to provide meaningful municipal services to the newly annexed areas because: (1) the annexation order would extend the same police protection, waste collection services, and recreation department facilities that are now provided within the municipality; (2) although petitioners claim they do not expect to take advantage of the provided police protection aside from a few emergency calls per year, these arguments are irrelevant, and the trial court's findings and conclusions to this effect are in error; (3) our Supreme Court has already concluded that a municipality is not required to add employees or equipment in order to provide meaningful police protection; and (4) the inquiry regarding the extension of municipal services focuses on a qualitative analysis in regard to nondiscrimination and a quantitative analysis in regard to the types of services provided.

**7. Cities and Towns— annexation—public policy violations— commercial-residential issue—unincorporated island issue—conflict of interest issue**

The trial court erred in an annexation case by finding policy violations of N.C.G.S. §§ 160A-33 through -42 by respondent's decision to only annex commercial properties and not to annex similarly situated residential properties, the creation of an unincorporated island within the new corporate limits, and a conflict of interest regarding a council member's position on the Village Council and his status as president and one-third owner of the

local ski resort because: (1) the trial court did not explain or examine how the challenged annexation violated the policies contained in the statutes, and no case law supporting such conclusions was found; (2) to the extent all of these issues implicated bad faith or improper motivations to members of the Village Council, inquiry into such questions was improper not only for the Court of Appeals but also for the superior court as well; and (3) petitioners did not present competent and substantial evidence to overcome the presumption of fairness, impartiality, and good faith with which public officials are cloaked as is petitioners' burden.

Appeal by respondent from judgment entered 23 May 2007 by Judge James U. Downs in Avery County Superior Court. Heard in the Court of Appeals 14 May 2008.

*David R. Paletta for petitioner-appellees.*

*Doughton & Hart PLLC, by Thomas J. Doughton and Amy L. Bossio, for respondent-appellant.*

HUNTER, Judge.

The Village of Sugar Mountain ("the Village" or "respondent") appeals from a judgment declaring its proposed annexation ordinances to be unlawful, null, and void. After careful review, we reverse and remand.

## I. Background

The Village is an incorporated municipality, with a population of less than 5,000, located in Avery County, North Carolina. The Village's original charter did not allow involuntary annexation. However, in 2000, the North Carolina Legislature amended the charter to permit the Village to involuntarily annex property.

On 23 August 2005, pursuant to its annexation power, the Village identified several areas for annexation by adopting a resolution of intent to annex. On the same date, the Village approved its Annexation Services Plan ("the original report"), which it was required to prepare pursuant to N.C. Gen. Stat. § 160A-35 (2007). The original report stated, *inter alia,* that the Village would provide the annexed properties with police protection, waste collection services, use of recreational facilities, and street maintenance. It also contained metes and bounds descriptions for the proposed annexation

. areas and a map indicating the Village's then-existing boundaries and the proposed annexation areas. On 24 August 2005, the Village displayed the original report and a list of affected property owners.[1] N.C. Gen. Stat. § 160A-37(c) (2007). On 11 October 2005, it conducted a public informational meeting, and on 15 November 2005, it held a public hearing. On 20 December 2005, the Village adopted four ordinances which annexed property from four of the five areas included in the original report. Ordinance 122005A annexed Area 05-A, Ordinance 122005B annexed Area 05-C, Ordinance 122005C annexed Area 05-D, and Ordinance 122005D annexed Area 05-E.

Petitioners own real estate in the annexed areas and include: (1) Bettie Norwood, Melissa Y. Norwood, and the Norwood Family Limited Partnership (hereinafter collectively referred to as "the Norwood family") (Area 05-A); (2) Sugar View Real Estate Investors (Area 05-C); (3) Manning and Martha Gambrell (Area 05-D); (4) Donnie A. and Cathy S. Iverson (Area 05-D); and (5) Kathleen Bunnells (Area 05-E). On 1 February 2006, petitioners filed a Petition for Review of the Annexation Ordinances. After a hearing in superior court, the court entered a judgment holding, *inter alia*, that the proposed annexation ordinances were unlawful, null, and void. The Village appeals.

## II. Analysis

A trial court's

review of an annexation ordinance is limited to deciding (1) whether the annexing municipality complied with the statutory procedures; (2) if not, whether the petitioners will suffer material injury as a result of any alleged procedural irregularities; and (3) whether the area to be annexed meets the applicable statutory requirements.

*Hayes v. Town of Fairmont*, 167 N.C. App. 522, 523-24, 605 S.E.2d 717, 718 (2004) (citing *In re Annexation Ordinance*, 278 N.C. 641, 647, 180 S.E.2d 851, 855 (1971); *Trask v. City of Wilmington*, 64 N.C. App. 17, 28, 306 S.E.2d 832, 838 (1983), *disc. review denied*, 310 N.C. 630, 315 S.E.2d 697 (1984); N.C. Gen. Stat. § 160A-38 (2003)), *disc. review denied*, 359 N.C. 410, 612 S.E.2d 320 (2005).

[Where o]n its face the record of the annexation proceedings shows substantial compliance with every essential provision of

---

1. As discussed *infra*, petitioners Bettie Norwood, Melissa Y. Norwood, and the Norwood Family Limited Partnership were not included in this list.

the applicable [annexation] statutes, . . . the burden is upon peti-
tioners . . . to show by competent evidence that [the municipality]
in fact failed to meet the statutory requirements or that there was
irregularity in the proceedings which materially prejudiced their
substantive rights.

*In re Annexation Ordinance*, 278 N.C. at 647, 180 S.E.2d at 855-56
(citation omitted). Respondent argues that the record of the annexa-
tion proceedings demonstrates its substantial compliance with the
essential statutory provisions and that petitioners did not meet their
burden of showing via competent evidence either that respondent
failed to meet the statutory requirements as a matter of fact or an
irregularity in the proceedings which materially prejudiced petition-
ers' substantive rights. Consequently, respondent asserts the trial
court erred in declaring the annexation ordinances unlawful, null,
and void. " 'On appeal, the findings of fact made below are binding on
this Court if supported by the evidence, even where there may be evi-
dence to the contrary.' However, 'conclusions of law drawn by the
trial court from its findings of fact are reviewable *de novo* on ap-
peal.' " *Briggs v. City of Asheville*, 159 N.C. App. 558, 560, 583 S.E.2d
733, 735 (citations omitted), *disc. review denied*, 357 N.C. 657, 589
S.E.2d 886 (2003).

At the outset, we note that many of the trial court's supposed
findings of fact are actually conclusions of law. In distinguishing
between findings of fact and conclusions of law, "[a]s a general rule,
. . . any determination requiring the exercise of judgment or the appli-
cation of legal principles is more properly classified a conclusion of
law." *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997)
(citations omitted). "[F]indings of fact [which] are essentially conclu-
sions of law . . . will be treated as such on appeal." *Harris v. Harris*,
51 N.C. App. 103, 107, 275 S.E.2d 273, 276 (citations omitted), *disc.
review denied*, 303 N.C. 180, 280 S.E.2d 452 (1981); *see also Charlotte
v. Heath*, 226 N.C. 750, 755, 40 S.E.2d 600, 604 (1946) ("[t]he label of
fact put upon a conclusion of law will not defeat appellate review").

In addition, we note that the trial court's findings and conclusions
as to the alleged statutory violations committed by respondent which
led to the trial court's striking down of the these ordinances fall into
two distinct categories: (1) those purported statutory violations that
pertain to a specific petitioner's or petitioners' property, and (2) those
that pertain to all of petitioners' respective properties. We address the
former in section III and the latter in section IV below.

## III. Violations Pertaining to Specific Properties

### A. The Norwood Property: Area 05-A

[1] Petitioner, the Norwood family, owns a tract of land consisting of approximately eighteen acres. Respondent annexed a one-acre tract, which was being used for commercial purposes, from this larger tract as part of Area 05-A. Respondent argues that the trial court erred in its findings of fact and conclusions of law that respondent: (1) did not properly identify the Norwood tract in its original report in violation of N.C. Gen. Stat. § 160A-35, and (2) did not "use recorded property lines and streets as boundaries" "[i]n fixing [the] new municipal boundaries" as to the one-acre tract in violation of N.C. Gen. Stat. § 160A-36(d) (2007). We agree.

At trial, petitioners essentially argued that the one-acre Norwood tract was left out of the original report because neither the tract nor the Norwood family were clearly identified on the Village's list of properties and property owners who might be affected by the annexation. However, N.C. Gen. Stat. § 160A-35 does not require such a list to be included in the original report. N.C. Gen. Stat. § 160A-35. Further, we note that the affected property owners' list that the Norwood family describes is actually mandated by N.C. Gen. Stat. § 160A-37(c). Petitioners waived all arguments pertaining to N.C. Gen. Stat. § 160A-37 at trial and specifically conceded that petitioners had notice that the Norwood family property was being considered for annexation. As such, to the extent that petitioners' argument involves a purported violation of N.C. Gen. Stat. § 160A-37's procedural requirements, these matters are not properly before us.

With regard to identifying proposed areas for annexation, N.C. Gen. Stat. § 160A-35 simply mandates that as part of the original report, the annexing entity must include "[a] map or maps of the municipality and adjacent territory" showing "[t]he present and proposed boundaries of the municipality." N.C. Gen. Stat. § 160A-35(1)(a). In looking at the evidence presented at trial and the applicable law, we do not believe that competent evidence exists to support the trial court's finding that the original report did not include the one-acre tract in violation of N.C. Gen. Stat. § 160A-35.

The map prepared by the Village as part of its original report clearly included the Norwood Family's one-acre tract which was ultimately annexed. In fact, Melissa Y. Norwood ("Ms. Norwood") admitted that the Norwood family's property, including "the piece of property [the Norwood family was] complaining about in this

case," was clearly shown on both the 10 August and 23 August 2005 maps prepared by the Village, the latter of which was included in the original report.

Even assuming, *arguendo*, that the 23 August map included the larger eighteen-acre tract and did not specifically carve out and identify the one-acre tract, this is of no import under the applicable law so long as the one-acre tract which the Village annexed was clearly included in the highlighted area on the 23 August map. Our law is clear that an annexing municipality has the "authority to adopt an ordinance extending the corporate limits of the municipality to include all, or such part, of the area described in the notice of public hearing which meets the requirements of G.S. 160A-36 and which the [municipality] has concluded should be annexed." N.C. Gen. Stat. § 160A-37(e). In other words, while it would have been impermissible for the Village to annex property that it had not included in its original report, it was permitted to omit property described in its original report from the property it ultimately annexed, which is exactly what occurred here.

In sum, as the 23 August map was clearly sufficient to allow the Norwood family to ascertain the existing boundaries of the town, the proposed areas of annexation, and the inclusion of their property in Area 05-A, we hold the trial court erred in finding that the one-acre Norwood tract was not properly identified in the original report and incorrectly concluded as a matter of law that N.C. Gen. Stat. § 160A-35 was violated here.

[2] Next, we also agree with respondent that the trial court erred by finding and concluding that respondent did not use "recorded property lines [or] streets" in establishing the "new municipal boundaries" for the one-acre tract in violation of N.C. Gen. Stat. § 160A-36(d). N.C. Gen. Stat. § 160A-36(d) provides that "[i]n fixing new municipal boundaries, a municipal governing board shall use recorded property lines and streets as boundaries." N.C. Gen. Stat. § 160A-36(d). This provision was amended by the General Assembly in 1998, and this appears to be the first case in which our appellate courts have been called upon to address the meaning of the phrase "recorded property lines." 1998 N.C. Sess. Laws ch. 150, § 6.

At trial, petitioners argued that because the Village used a surveyed line that (1) was not created via a county-approved subdivision of land and (2) could be changed by the Norwood family at any time, to construct a portion of the one-acre tract's boundary description, said description violated N.C. Gen. Stat. § 160A-36(d). As indicated by

its findings of fact and conclusions of law, the trial court accepted this argument. In looking at the evidence presented at trial and the applicable law, we do not believe that competent evidence exists to support the trial court's findings.

N.C. Gen. Stat. § 160A-36(d) contains no express requirement that the property lines utilized by a municipality must be immutable or the result of a formal, county-approved subdivision of land in order to qualify as "recorded property lines." Here, the record evidence clearly shows that the Village did use property lines that had been recorded by the Norwood family. In setting the new boundary lines, the Village specifically utilized the property description contained in a deed which: (1) transferred the eighteen-acre tract to the Norwood Family Limited Partnership; (2) was recorded with the Avery County Registry on 24 August 2000; (3) references five tracts, including the tract at issue here, which is labeled as tract two; and (4) incorporates by reference a plat which the Norwood family recorded with the Avery County registry in May 2000. The tract at issue is also contained in this plat.

While it is true that on 12 June 2006 the Norwood family revised its plat and eliminated any references to the tract at issue here, the revision and recordation occurred well after the adoption of the annexation ordinance and was not available to the Village at the time of annexation. Hence, we believe that the Village's use and reliance on the then-existing recorded deed and plat, both of which were consistent with the actual description of the one-acre tract, complied with the mandates of N.C. Gen. Stat. § 160A-36(d).

Furthermore, the record demonstrates that the one-acre tract at issue is bounded by: (1) a street; (2) a tract of commercial property, which is not owned by the Norwood Family Limited Partnership nor any member of the Norwood family and was recorded via deed; (3) Ms. Norwood's residential property, which is not part of the larger eighteen-acre tract, has its own tax parcel number, and was recorded via a separate deed; (4) Ms. Norwood's mother's residential property, which also is not part of the larger eighteen-acre tract, has its own tax parcel number, and was recorded via a separate deed; and (5) a 0.993-acre tract of Norwood family property, which is part of the larger eighteen-acre tract, has the same tax parcel number, and had been voluntarily annexed by respondent in 1989. The 1989 ordinance annexing the 0.993-acre tract and the property description of the tract contained in said ordinance were recorded. The boundaries for the one-acre tract at issue were drawn from these bordering properties.

Clearly, the boundary lines derived from the street, the separately-owned commercial property, Ms. Norwood's residential property, and her mother's residential property meet the requirements of section 160A-36(d). While we believe that the line derived from the voluntarily annexed tract is also a "recorded property line" within the meaning and intent of the statute, even if one assumes, *arguendo*, that it is not, the record still clearly supports that the Village complied with the statute. Section 160A-36(d) mandates the use of recorded property lines and streets "[i]n fixing *new* municipal boundaries[.]" N.C. Gen. Stat. § 160A-36(d) (emphasis added). Here, the recorded line that the Village used from the voluntarily-annexed tract was already part of the pre-existing municipal boundary; as such, this line did not constitute a "new municipal boundar[y]" within the meaning of the statute. Accordingly, we hold the trial court erred in concluding that respondent violated N.C. Gen. Stat. § 160A-36(d).

B. The Bell Property: Area 05-D

[3] A 5.12-acre tract of land owned by Melvin T. Bell and Susan D. Bell ("the Bell property") was annexed by the Village as part of Area 05-D. Respondent contends that the trial court erred in its findings of fact and conclusions of law: (1) that respondent incorrectly classified the Bell tract for purposes of N.C. Gen. Stat. § 160A-36(c)(1)'s subdivision test and that petitioners' evidence and calculations demonstrate that Area 05-D fails said test; and (2) that the Iversons and the Gambrells suffered "material injury" based on the inclusion of the Bell property in Area 05-D. We agree.

In both its original and final annexation reports, the Village classified the 5.12-acre Bell tract as entirely commercial. At trial, the Village argued that the Bell property was properly treated as entirely commercial for purposes of calculating the subdivision test because (1) the Bell property had a commercial operation on it and (2) the undeveloped parts of the property could not be developed for any other purposes because they were too steep. Consequently, respondent argued that the subdivision test analysis that petitioners offered, which divided the property into separate tracts, was an improper application of the statute. In addition, respondents asserted that even if one assumed, *arguendo*, that its calculations for Area 05-D failed the subdivision test, the Iversons and Gambrells ultimately had no standing to assert the issue because the Bells did not appeal the annexation ordinance and the Iversons and Gambrells could not show "material injury" as required by N.C. Gen. Stat. § 160A-38. N.C. Gen. Stat. § 160A-38(a) (2007).

At trial, petitioners argued that the Bell tract should not have been counted as one commercial tract but rather as a 1.28-acre commercial tract and a 3.84-acre wooded tract. When calculated this way, petitioners claimed that Area 05-D failed the subdivision test because only 55.14% of the residential and vacant lots located there were three acres or less. In support of their argument, petitioners offered a survey plat of the Bell property prepared on 12 June 2006, a date subsequent to the time of annexation and incidentally the same date on which the Norwood family updated their plat.

The plat offered by petitioners divides the 5.12-acre Bell property into three tracts: (1) a 1.28-acre commercial tract; (2) a 0.47-acre wooded tract; and (3) a 3.36-acre wooded tract. The plat also contains a summary of the total acres and lists 3.84[2] acres as "woods" and 1.28 acres as "being used." Petitioners contended, as they do here, not only that the entire 5.12-acre Bell property should not have been counted as commercial, but that the 0.47 and 3.36-acre wooded tracts should be combined into one tract and classified as vacant for purposes of the subdivision test.

As evidenced by its findings of fact and conclusions of law, the trial court accepted petitioners' position. However, the findings do not contain any detail nor any supporting rationales as to why the trial court rejected respondent's methods and calculations and accepted petitioners' as accurate. After reviewing the evidence and the applicable law, we believe the lack of detail and reasoning in the trial court's findings indicates that these findings were made under a misapprehension of law. Consequently, we do not believe that competent evidence exists to support these findings and conclude that the trial court erred in concluding that respondent violated N.C. Gen. Stat. § 160A-36(c)(1).

N.C. Gen. Stat. § 160A-36(c) requires that the land proposed for annexation must be developed for "urban purposes" which the statute defines pursuant to a "use and subdivision test" as follows:

Any area which is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, *and is subdivided into lots and tracts such that at least sixty percent (60%) of the total*

---

2. The correct calculation should be 3.83 acres.

> *acreage, not counting the acreage used at the time of annexa-*
> *tion for commercial, industrial, governmental or institutional*
> *purposes, consists of lots and tracts three acres or less in size.*

N.C. Gen. Stat. § 160A-36(c)(1) (emphasis added). The emphasized portion of the above statute contains the requirements for the subdivision test.

> The subdivision test is concerned with the degree of land subdivision in the annexation area. The city first determines the total acreage of the annexation area and then subtracts all property that is in any of the[] four urban uses: commercial, industrial, institutional, or governmental. . . . What is left is property that is either in residential use or that is in nonurban use (or, colloquially, is *vacant*). The subdivision test is applied to this remaining property.

3 David M. Lawrence, *Annexation Law in North Carolina* § 4.10 at 4-41 (2007). "[A]creage in use for [urban] purposes shall include acreage actually occupied by buildings or other man-made structures together with all areas that are reasonably necessary and appurtenant to such facilities for purposes of parking, storage, ingress and egress, utilities, buffering, and other ancillary services and facilities." N.C. Gen. Stat. § 160A-36(c); *see also Hayes v. Town of Fairmont*, 167 N.C. App. at 530, 605 S.E.2d at 722; *Huyck Corp. v. Town of Wake Forest*, 86 N.C. App. 13, 20, 356 S.E.2d 599, 604 (1987), *affirmed per curiam*, 321 N.C. 589, 364 S.E.2d 139 (1988).

> In determining degree of land subdivision for purposes of meeting the requirements of G.S. 160A-36, the municipality shall use methods calculated to provide reasonably accurate results. In determining whether the standards set forth in G.S. 160A-36 have been met on appeal to the superior court under G.S. 160A-38, the reviewing court shall accept the estimates of the municipality as provided in this section unless the actual total area or degree of subdivision falls below the standards in G.S. 160A-36[.]

N.C. Gen. Stat. § 160A-42 (2007). This Court has previously concluded that in general land estimates based on recorded plats, tax maps and deeds, aerial photographs, and personal observations of a land surveyor comply with N.C. Gen. Stat. § 160A-42. *Scovill Mfg. Co. v. Town of Wake Forest*, 58 N.C. App. 15, 20-21, 293 S.E.2d 240, 245 (citing N.C. Gen. Stat. § 160A-42(1) & (2)), *disc. review denied*, 306 N.C. 559; 294 S.E.2d 371 (1982). "The normal practice has been to subtract the

whole of each lot or tract that has been characterized as in one of the four urban uses, even if some part of the lot or tract is in fact undeveloped, as long as the developed acreage is a significant portion of the tract as a whole." 3 David M. Lawrence, *Annexation Law in North Carolina* § 4.10 at 4-43. This Court has concluded that the entire lot or tract may be subtracted unless the urban use is "insignificant as compared to non[urban] use[.]" *See Asheville Industries, Inc. v. City of Asheville*, 112 N.C. App. 713, 720-21, 436 S.E.2d 873, 877 (1993) (citing *Food Town Stores, Inc. v. City of Salisbury*, 300 N.C. 21, 265 S.E.2d 123 (1980)). Petitioners have the burden of showing the urban use is insignificant. *Id.* "When compliance with the statutory requirements is in doubt, the determination of whether an area is used for a purpose qualifying it for annexation will depend upon the particular circumstances." *Id.* at 720, 436 S.E.2d at 877 (citing *Lithium Corp. v. Bessemer City*, 261 N.C. 532, 135 S.E.2d 574 (1964)).

When the evidence is viewed in accordance with the above law and practice, we believe it demonstrates that respondent used "methods calculated to provide reasonably accurate results" to "determin[e] [the] degree of land subdivision for purposes of" N.C. Gen. Stat. § 160A-36. N.C. Gen. Stat. § 160A-42. Here, the company that respondent hired to construct its annexation reports noted that the reports and the subdivision test calculations were "[b]ased upon Avery County tax maps acquired July 13th, 2005" as well as actual observations of the properties made by a certified land surveyor. Neither the county tax map nor the deed divide the Bell property into separate tracts. In contrast, petitioners' argument that respondent erred in treating the whole Bell property as commercial was primarily based on a plat that did not exist at the time of annexation. While observation of the actual condition of the property did show that it had wooded parts which were too steep to be developed, this is not, by itself, sufficient to demonstrate that respondent did not use methods calculated to provide reasonably accurate results. In fact, given that: (1) the only actual use made of the Bell property is commercial; (2) those parts of the property that are wooded cannot be developed for any purposes other than to possibly serve the commercial facilities; and (3) the 3.36-acre wooded piece has no street frontage, it does appear reasonable to classify the entire property as commercial and to exclude the whole tract in calculating the subdivision test. *E.g., Adams-Millis Corp. v. Kernersville*, 6 N.C. App. 78, 84, 169 S.E.2d 496, 500 (concluding that a municipality can consider a landlocked lot as part of the lot in front of it and group the two lots, (the land-

locked lot and the one providing it with access to a street), as a single lot), *cert. denied*, 275 N.C. 681, —— S.E.2d —— (1969). Here, access to the street from the 3.36-acre wooded parcel is provided by the 1.28-acre commercial parcel. Further, as a leading scholar on North Carolina annexation law has opined:

> A significant degree of land subdivision is one sign of urban development. Industrial, commercial, institutional, and governmental property is subtracted before applying the subdivision test because that sort of property is already developed in urban use, and any remnants of tracts in those uses are generally unavailable for further subdivision. Because of that unavailability, it makes little sense to demand that such remnants be part of the area in which significant subdivision is required.

3 David M. Lawrence, *Annexation Law in North Carolina* § 4.10 at 4-46. Here, both respondent and petitioners admitted that the wooded properties could not be developed for any other purpose. Consequently, it does appear that respondent's methods in calculating the Bell tract provided "reasonably accurate results."

Nevertheless, even if one accepts that portion of the trial court's finding that the wooded tracts should be treated as vacant, when considering the evidence and the applicable law, we do not see how the trial court could find, (especially with no supporting details or rationale), that the 0.47-acre and 3.36-acre wooded tracts should be combined into one tract for purposes of the subdivision test simply because the survey plat has a summary which lists 1.28 acres as "being used" and 3.83 acres as "woods." Here, the plat and photographs of the Bell property which are included in the record show that the 0.47-acre tract is bounded by the commercial tract, a paved road and paved parking, and a gravel drive. In addition, the 0.47-acre tract fronts Highway 184 and no part of this tract abuts the 3.36-acre wooded tract. Hence, even if we accept the portion of the trial court's finding which concludes that the wooded tracts should be treated as vacant, we do not believe that competent evidence exists to support the portion of the trial court's finding that the Bell property should be counted as a 1.28-acre commercial tract and a 3.84-acre vacant tract. Rather, we conclude that the competent evidence demonstrates that the 0.47 and the 3.36-acre wooded tracts should be counted as separate, vacant tracts. As respondent notes, when this approach is taken, Area 05-D does pass the subdivision test (60.63%). In sum, given that Area 05-D passes the subdivision test if the Bell property is counted

entirely as commercial or if the two wooded parcels are counted as separate, vacant tracts, we hold that the trial court erred in concluding that respondent violated N.C. Gen. Stat. § 160A-36(c).

In the alternative, even if one assumes, *arguendo*, that Area 05-D violates the subdivision test, we agree with respondent that the Iversons and the Gambrells cannot demonstrate "material injury" as required by section 160A-38. Here, the only property that petitioners challenged at trial involving Area 05-D was the Bell property. The Bells are not parties to this case, and the time for their appeal has expired. N.C. Gen. Stat. § 160A-38(a). While petitioners argue that respondent cannot raise this issue because respondent did not object to the trial court's findings of fact that petitioners have standing, the trial court's finding of fact that "[p]etitioners own property within each of the areas [to be] annexed" does not by itself support a conclusion that the Iversons and the Gambrells had standing to contest respondent's alleged violation of N.C. Gen. Stat. § 160A-36's subdivision test. In addition, the trial court's finding that "[p]etitioners have standing to bring this cause of action" is actually a conclusion of law, which is reviewable *de novo*.

[4] Here, the trial court declared ordinance 122005C, which annexed Area 05-D, null and void. However, N.C. Gen. Stat. § 160A-38(g)(4) provides that the trial court may "[d]eclare the ordinance null and void, if the court finds that the ordinance cannot be corrected by remand as provided in subdivisions (1), (2), or (3) of this subsection." Hence, pursuant to N.C. Gen. Stat. § 160A-38(g)(2), the trial court should have simply remanded the ordinance to the Village to amend the annexation boundaries so as to conform with N.C. Gen. Stat. § 160A-36, which the Village could achieve by simply removing the Bell property. In other words, even though the Iversons and Gambrells own properties in Area 05-D, regardless of whether the Bell property is included in Area 05-D, their properties can still be annexed. As such, we fail to see how they suffered any "material injury" due to the inclusion of the Bell property in Area 05-D.

## C. The Bunnells Property: Area 05-E

[5] Next, respondent asserts that the trial court erred in its findings of fact and conclusions of law that its annexation of petitioner Bunnells' property was not consistent with the public policy of "sound urban development" articulated in N.C. Gen. Stat. § 160A-33 and "the purposes set forth in N.C.G.S. [§] 160A-36(b)." N.C. Gen. Stat. § 160A-33 (2007); *see also* N.C. Gen. Stat. § 160A-36(b). Rather,

respondent argues that the competent evidence here demonstrates that it substantially complied with both statutory provisions and' that consequently, Area 05-E meets the statutory annexation requirements. We agree.

Ms. Bunnells' property, located near the intersection of Highways 105 and 184, is the only property in Area 05-E. Her property directly abuts a parcel of land that was voluntarily annexed by the Village on 9 May 1995 as well as a ten-foot strip of land running along Highway 184, which was also voluntarily annexed on 9 May 1995. Petitioners admit and the trial court found that respondent did meet the literal contiguity requirements of N.C. Gen. Stat. § 160A-36(b) and N.C. Gen. Stat. § 160A-41(1) in annexing Area 05-E. N.C. Gen. Stat. § 160A-36(b); N.C. Gen. Stat. § 160A-41(1) (2007).

It is true that this Court has rejected annexations where the municipality has complied with the literal statutory contiguity requirements. *See Amick v. Town of Stallings*, 95 N.C. App. 64, 382 S.E.2d 221 (1989), *disc. review improvidently allowed*, 326 N.C. 587, 391 S.E.2d 40 (1990); *see also Hughes v. Town of Oak Island*, 158 N.C. App. 175, 580 S.E.2d 704, *affirmed per curiam*, 357 N.C. 653, 588 S.E.2d 467 (2003). However, in both *Amick* and *Hughes*, the respective corridors or "shoestrings" at issue were created and annexed at the same time as the properties that the municipalities had targeted for annexation. In addition, in those cases, this Court concluded that the municipalities had created and manipulated the size of the shoestrings solely to meet the contiguity requirements with the goal of annexing noncontiguous properties located at the end of the respective shoestrings. *See Amick*, 95 N.C. App. at 71-72, 382 S.E.2d at 226; *Hughes*, 158 N.C. App. at 182-84, 580 S.E.2d at 709-10.

In contrast, here, the alleged "shoestring" was annexed more than ten years prior to the annexation of Ms. Bunnells' property. In addition, not only was Ms. Bunnells' property contiguous to the Village at the time of annexation, the vast majority of her property directly abuts the previously annexed larger tract and not the corridor. As such, there was no "gerrymandering" or manipulation of the corridor here so as to meet the contiguity requirements as occurred in *Amick* and *Hughes*. Finally, to the extent that petitioners' argument implicates judicial review of the previous 1995 annexations, we decline to address these issues as the validity of the 1995 annexations are not the proper subject of petitioners' appeal. *McKenzie v. City of High Point*, 61 N.C. App. 393, 401, 301 S.E.2d 129, 131, *disc. review denied*, 308 N.C. 544, 302 S.E.2d 885 (1983).

## IV. Violations Pertaining to All Properties

### A. Meaningful Municipal Services

**[6]** Respondent also argues that the trial court erred in finding and concluding that respondent violated N.C. Gen. Stat. §§ 160A-33 through -42 with regard to its plans to provide municipal services to the newly annexed areas. At the center of the trial court's findings and conclusions that respondent violated these statutory provisions is the idea that respondent will not provide petitioners with any meaningful benefits from the annexation. Because we determine the trial court was operating under a misapprehension of existing law in making these findings and conclusions, we conclude they are in error.

N.C. Gen. Stat. § 160A-35 "obligates the annexing municipality to extend existing public services to the annexed area . . . ." *Nolan v. Village of Marvin*, 360 N.C. 256, 257, 624 S.E.2d 305, 306 (2006). Prior to our Supreme Court's decision in *Village of Marvin*, our appellate courts consistently held that a municipality substantially complies with the annexation statutes so long as the "municipal services [are] extended to [the] newly annexed areas in a nondiscriminatory manner, meaning that annexed residents and property owners must receive substantially the same services that existing [municipal] residents and property owners receive." *Id.* (citing *Green v. Town of Valdese*, 306 N.C. 79, 87, 291 S.E.2d 630, 635 (1982) and N.C. Gen. Stat. § 160A-37(h) (2003)).

However, in *Village of Marvin*, our Supreme Court held that in addition to the nondiscrimination requirement, a "meaningful extension of public services to [the] annexed property" is required. *Village of Marvin*, 360 N.C. at 257, 624 S.E.2d at 306 (citing N.C. Gen. Stat. §§ 160A-33, -35). Specifically, the Court concluded: "We agree that services must be provided on a (qualitative) nondiscriminatory basis; however, we also conclude that N.C.G.S. § 160A-35(3) is grounded in a legislative expectation that the annexing municipality possesses meaningful (quantitative) services to extend to the annexed property." *Id.* at 260, 624 S.E.2d at 308. In reaching this conclusion, the Court reasoned that N.C. Gen. Stat. § 160A-35 and N.C. Gen. Stat. § 160A-33 should be read *in pari materia*, and the Court highlighted certain aspects of this State's public policy on annexation as codified in N.C. Gen. Stat. § 160A-33 in support:

"(2) That municipalities are created to provide the governmental services essential for sound urban development and for the protection of health, safety and welfare in areas being intensively

used for residential, commercial, industrial, institutional and government purposes or in areas undergoing such development;

(3) That municipal boundaries should be extended, in accordance with legislative standards applicable throughout the State, to include such areas and to provide the high quality of governmental services needed therein for the public health, safety and welfare; and

. . .

(5) That areas annexed to municipalities in accordance with such uniform legislative standards should receive the services provided by the annexing municipality in accordance with G.S. 160A-35(3)."

*Id.* at 261, 624 S.E.2d at 308 (quoting N.C. Gen. Stat. § 160A-33 (2003)) (emphasis omitted).

In holding that the Village of Marvin's annexation ordinance "d[id] not provide for [a] meaningful extension of municipal services" to the newly annexed properties, the Supreme Court emphasized that the only services that the Village planned to provide were "part-time administrative services, such as zoning and tax collection, [which] simply fill[ed] needs created by the annexation itself, without conferring significant benefits on the annexed property owners and residents." *Id.* at 262, 624 S.E.2d at 308-09. Further, the Court emphasized that the Village of Marvin was not going to provide any of the municipal services specifically listed in N.C. Gen. Stat. § 160A-35(3). *Id.* at 260, 624 S.E.2d at 308-09. In addition, the Court was careful to note that its "decision d[id] not require an annexing municipality to provide all categories of public services listed in N.C.G.S. § 160A-35(3)." *Id.* at 261-62, 624 S.E.2d at 308. Finally, the Court held that due to the Village's failure to "provide for meaningful extension of municipal services," the Village had "not substantially complied with the statutory procedures set forth in N.C.G.S. sections 160A-33 to 160A-42" and that the property owners would "suffer material injury, in the form of municipal taxes, if annexation proceeds." *Id.* at 262, 624 S.E.2d at 309.

In applying the above analysis in *Nolan v. Town of Weddington*, this Court emphasized that "[t]he annexation statutes indicate police protection is a service that furthers annexation policy; in fact, the statute expressly contemplates that one type of service an annexing town may extend to an annexed area is 'police protection[.]' " *Town*

*of Weddington*, 182 N.C. App. 486, 492, 642 S.E.2d 261, 265 (first alteration added; second alteration in original), *disc. review denied*, 361 N.C. 695, 652 S.E.2d 648 (2007). In contrast to *Village of Marvin*, the Court noted that the Town of Weddington planned to provide the newly annexed areas with "police protection, a service that promotes the health, safety, and welfare of residents within the annexed area." *Id.* Accordingly, the Court held that the provision of police protection was a meaningful benefit. *Id.*

In the instant case, the annexation ordinance would extend the same police protection, waste collection services, and recreation department facilities that are now provided within the Village. Both police protection and waste collection services are specifically listed as core municipal services by statute. N.C. Gen. Stat. § 160A-35(3). Quantitatively, these benefits exceed those approved by this Court as meaningful in *Town of Weddington*.

Petitioners argue, in part, that these benefits are not meaningful because of the quality of the services. For example, petitioners note that respondent's projections indicate that respondent will incur little to no additional expenses associated with extended police protection (such as the fact that respondent will not need to hire additional officers), and petitioners claim that they do not expect to take advantage of the provided police protection aside from a few emergency calls per year. As discussed *infra*, we conclude that these arguments are irrelevant, and the trial court's findings and conclusions to this effect are in error.

First, prior to our Supreme Court's decision in *Village of Marvin*, our law was clear that a municipality was not required to add employees or equipment in order to provide meaningful police protection. *See, e.g., Bali Co. v. City of Kings Mountain*, 134 N.C. App. 277, 284, 517 S.E.2d 208, 212-13 (1999). Further, and more importantly, we do not believe that our Supreme Court intended to impose such a requirement in *Village of Marvin*. In *Village of Marvin*, our Supreme Court considered "whether the applicable annexation statutes require an annexing municipality to extend a threshold (*quantitative*) level of public services to the annexed territory." *Village of Marvin*, 360 N.C. at 257, 624 S.E.2d at 306 (emphasis added). The Court emphasized that municipal "services must be provided on a (*qualitative*) nondiscriminatory basis" and that "N.C.G.S. § 160A-35(3) is grounded in a legislative expectation that the annexing municipality possesses meaningful (*quantitative*) services to extend to the annexed property." *Id.* at 260, 624 S.E.2d at 308.

As such, we do not believe that *Village of Marvin* establishes that our review as to whether the extension of municipal services is meaningful should center on the quality of services provided; rather, the qualitative analysis is grounded in nondiscrimination, and our inquiry into what types of services are provided is quantitative, not qualitative. Hence, it is not the number of incidents that the police will be involved in that concerns this Court, but rather the category of service provided. Consequently, we conclude that respondent substantially complied with the statutory annexation requirements and hold that the trial court erred in determining that respondent will not provide meaningful municipal services to petitioners' properties.

### B. Additional Violations

**[7]** Next, respondent argues that there is no competent evidence to support the trial court's findings of fact that respondent violated the public policies articulated in N.C. Gen. Stat. § 160A-33 through N.C. Gen. Stat. § 160A-42 with regard to three other purported violations. Here, the trial court's findings of fact and conclusions of law center on: (1) respondent's decision "to only annex commercial properties and not to annex similarly situated residential properties"; (2) the "creation of . . . an unincorporated island within the [new corporate limits]; and (3) a conflict of interest regarding council member Jochl's position on the Village Council and his status as president and one-third owner of the local ski resort.

In actuality, the trial court's findings and conclusions regarding these three purported violations are not firmly based on a specific statutory violation, but rather are grounded in the trial court's belief that respondent's decision to annex these properties was a product of the Village's desire to "restrict the number of new voters brought into the Village by the annexations . . . [a] motivation [which] is contrary to the public policies set forth in N.C.G.S. 160A-33." With regard to each purported violation, i.e., the commercial-residential issue, the unincorporated island issue, and the conflict of interest issue, the trial court does not truly explain or examine how the challenged annexation violates the policies contained in the statutes, and unlike with the provision of municipal services discussed *supra*, we have found no case law supporting such conclusions. Furthermore, to the extent that all of these issues implicate bad faith or improper motivations to members of the Village Council, including Mr. Jochl, inquiry into such questions is improper not only for this Court but for the superior court as well. *See Allred v. City of Raleigh*, 7 N.C. App. 602, 613, 173 S.E.2d 533, 540 (1970), *reversed on other grounds*,

277 N.C. 530, 178 S.E.2d 432 (1971). Furthermore, petitioners did not present competent and substantial evidence to overcome the presumption of fairness, impartiality, and good faith with which public officials are cloaked as is petitioners' burden. *In re Annexation Ordinance*, 284 N.C. 442, 452, 202 S.E.2d 143, 149 (1974). As such, we conclude that the trial court's findings of fact and conclusions of law regarding these purported policy violations are error.

## V. Conclusion

After careful review, we conclude that the record demonstrates that respondent substantially complied with the essential statutory provisions in annexing petitioners' property and that petitioners failed to produce competent evidence demonstrating that respondent failed to meet the statutory requirements as a matter of fact or that an irregularity in the proceedings existed which materially prejudiced petitioners' substantive rights. Consequently, we reverse and remand the trial court's judgment striking the Norwood family's one-acre tract from Area 05-A and declaring ordinances 122005A, 122005C, 122005D, and 122005E unlawful, null, and void and instruct the trial court to declare the ordinances valid.

Reversed and remanded.

Judges STEELMAN and STEPHENS concur.