IN RE: ANNEXATION ORDINANCE NO. 1219 ADOPTED BY CITY OF ASHEVILLE, MAY 14, 1981

No. 8228SC524

(Filed 21 June 1983)

1. **Municipal Corporations § 2.4— annexation ordinance—service of petition for judicial review**

   Service of a petition for review of an annexation ordinance on respondent city by certified mail, return receipt requested, accomplished the same basis for proof of service as would have been accomplished by use of registered mail as is required by G.S. 160A-50 and sufficiently complied with that statute. G.S. 1A-1, Rule 4(j)(5) and G.S. 1-75.10.

2. **Municipal Corporations § 2.3— annexation—sufficiency of metes and bounds description**

   The metes and bounds description in a notice of hearing and an annexation ordinance, when considered with maps included in the report for extending services to the annexed area, provided a boundary description of the annexed area which could be established on the ground in substantial com-

pliance with G.S. 160A-49(b)(2) and G.S. 160A-49(e)(1), notwithstanding the description contained a reference to the "right-of-way" of a private road.

**3. Municipal Corporations § 2.3— annexation—following natural and topographical features**

The trial court did not err in finding that an annexation ordinance met statutory requirements that natural and topographical features be used in fixing new municipal boundaries whenever practical.

**4. Municipal Corporations § 2.6— extension of services to annexed area—public transportation and recreational facilities not included**

A city was not required by G.S. 160A-47(3) to include public transportation and parks and recreation facilities in its plans for extension of services to an annexed area.

Judge EAGLES concurring in result.

APPEAL by respondent City of Asheville from *Jolly, Judge.* Judgment entered in BUNCOMBE County Superior Court 30 January 1982. Heard in the Court of Appeals 12 April 1983.

This action was instituted seeking review of an annexation ordinance adopted by respondent City of Asheville. After being served with the petition, by certified mail, Asheville made a special appearance in which it moved to dismiss for insufficiency of process. That motion was overruled. When the matter came on for hearing on the merits, the parties entered into the following stipulations.

1. That the Petitioners herein are the owners of property within the area proposed for annexation.

2. That the Respondent City of Asheville is a municipal corporation organized and existing under the laws of the State of North Carolina and is located within Buncombe County, North Carolina.

3. That the Respondent City of Asheville is a city of more than 5,000 persons according to the last Federal Decennial Census and therefore subject to the provisions of Part 3, Article 4A, Chapter 160A of the General Statutes of North Carolina.

4. That on March 26, 1981, the City of Asheville passed a Resolution of Intent, being Resolution No. 81-65, stating the intent of the City of Asheville to consider the annexation of a

portion of an area lying in Buncombe County, North Carolina including land owned by the Petitioners herein.

5. That on April 9, 1981, the Respondent City of Asheville passed a Resolution adopting and approving a plan for the extension of city services into said area being Resolution No. 81-81.

6. That on May 14, 1981, the Respondent City of Asheville passed a Resolution amending the plan for extension of city services into the area proposed for annexation being Resolution No. 81-103.

7. That on May 14, 1981, the Respondent City of Asheville passed Ordinance No. 1219 providing for the annexation to the City of Asheville effective June 30, 1981 certain land adjoining the City of Asheville including property owned by the Petitioners herein.

8. That the Respondent City made no finding that the area to be annexed was or is in need of greater governmental services than those being provided prior to annexation.

After hearing extensive evidence for petitioners, Judge Jolly entered an order containing findings of fact and conclusions of law and a judgment that the annexation ordinance was invalid and void. From that order, Asheville has appealed.

*William F. Slawter for petitioner-appellees.*

*Redmond, Stevens, Loftin & Currie, P.A., by John S. Stevens and Thomas R. West; and Herbert L. Hyde, P.A., for respondent-appellant.*

WELLS, Judge.

[1] The first issue we must address is whether petitioners' petition for review was properly served on Asheville. It is Asheville's contention that the provisions of G.S. 160A-50(a) and (b) are controlling, and require service by registered mail, return receipt requested. The statute, in pertinent part, is as follows:

Sec. 160A-50. *Appeal.*

(a) Within 30 days following the passage of an annexation ordinance under authority of this Part, any person own-

ing property in the annexed territory who shall believe that he will suffer material injury by reason of the failure of the municipal governing board to comply with the procedure set forth in this Part or to meet the requirements set forth in G.S. 160A-48 as they apply to his property may file a petition in the superior court of the county in which the municipality is located seeking review of the action of the governing board.

(b) Such petition shall explicitly state what exceptions are taken to the action of the governing board and what relief the petitioner seeks. Within five days after the petition is filed with the court, the person seeking review shall serve copies of the petition by registered mail, return receipt requested, upon the municipality.

. . .

Petitioners contend that under the provisions of G.S. 1A-1, Rule 4(j)(5), they were allowed the alternative method of service by certified mail, return receipt requested. That statute, in pertinent part, is as follows:

Rule 4. *Process*

. . .

(j) *Process-manner of service to exercise personal jurisiction.* —

In any action commenced in a court of this State having jurisdiction of the subject matter and grounds for personal jurisdiction as provided in G.S. 1-75.4, the manner of service of process within or without the State shall be as follows:

. . .

(5) *Counties, Cities, Towns, Villages and Other Local Public Bodies.* —

a. Upon a city, town, or village by personally delivering a copy of the summons and of the complaint to its mayor, city manager or clerk or by mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to its mayor, city manager or clerk.

There is no dispute that the petition was sent by certified mail addressed to the City of Asheville, in care of its City Manager (by name), and was received by the City's mail clerk, who signed the return receipt acknowledging its delivery. In addition, on Asheville's motion to dismiss, the trial court heard the testimony of Lawrence Hoote, a 28 year veteran of the Asheville Post Office, who testified that he was familiar with the postal service methods and regulations pertaining to registered and certified mail; that both are "accountable" mail; and that generally, the only distinction between the two is that with registered mail, the post office retains a record of the transaction, while with certified mail, a duplicate of the customer receipt is not retained by the post office.

G.S. 1-75.10 provides in pertinent part as follows:

Where the defendant appears in the action and challenges the service of the summons upon him, proof of the service of process shall be as follows:

. . .

(4) Service by Registered or Certified Mail.—In the case of service by registered or certified mail, by affidavit of the serving party averring:

a. That a copy of the summons and complaint was deposited in the post office for mailing by registered or certified mail, return receipt requested.

b. That it was in fact received as evidenced by the attached registry receipt or other evidence satisfactory to the court of delivery to the addressee; and

c. That the genuine receipt or other evidence of delivery is attached.

The affidavit of service and receipt required by G.S. 1-75.10(4) was properly filed and presented at the hearing on Asheville's motion to dismiss.

We are persuaded that the use of certified mail in this case accomplished exactly the same basis for proof of service as would have been accomplished by use of registered mail and that the trial court properly denied Asheville's motion to dismiss.

[2] In the second issue raised by Asheville, it contends that Judge Jolly erred in declaring the annexation ordinance to be invalid and void. We agree. Our appellate courts have consistently held that the scope of judicial review of annexation ordinances is limited in scope.

The superior court's review of the annexation ordinance of a municipal governing body is limited by statute. *Moody v. Town of Carrboro,* 301 N.C. 318, 271 S.E. 2d 265 (1980). Upon review the judge may examine the annexation proceedings to determine only whether the municipal governing board substantially complied with the requirements of the applicable annexation statutes. *Id.; Humphries v. City of Jacksonville,* 300 N.C. 186, 265 S.E. 2d 189 (1980); *Food Town Stores v. City of Salisbury,* 300 N.C. 21, 265 S.E. 2d 123 (1980).

G.S. 160A-50(f) provides in effect that on judicial review the court may hear oral arguments, receive written briefs, and may take evidence intended to show:

(1) that the statutory procedure was not followed, or

(2) that the provisions of G.S. 160A-47 were not met, or

(3) that the provisions of G.S. 160A-48 have not been met.

This section clearly specifies the inquiries to which the court is limited. *In re Annexation Ordinance,* 284 N.C. 442, 202 S.E. 2d 143 (1974).

This Court described the limitations of a court's review of an annexation ordinance in *In re Annexation Ordinance,* 278 N.C. 641, 180 S.E. 2d 851 (1971). There the Court said:

"Thus, the court's review is limited to these inquiries: (1) Did the municipality comply with the statutory procedures? (2) If not, will the petitioners 'suffer material injury' by reason of the municipality's failure to comply? (3) Does the character of the area specified for annexation meet the requirement of G.S. 160-453.16 as applied to petitioners' property? G.S. 160-453.18(a) and (f)."

*Id.* at 646-47, 180 S.E. 2d at 855.

*In re Annexation Ordinance,* 303 N.C. 220, 278 S.E. 2d 224 (1981); *see also McKenzie v. High Point,* 61 N.C. App. 393, 301 S.E. 2d 129 (1983).

Our task is to determine whether the trial court's findings of fact, conclusions of law, and judgment are supported by the record before us.

Judge Jolly voided the ordinance in this case based on his perception that the description of the area to be annexed failed to meet statutory requirements. The following findings of fact in Judge Jolly's order speak to that issue:

2. The aforesaid ordinance purports to contain a "metes and bounds" description of the territory intended to be annexed by the annexation ordinance, as follows:

BEGINNING at a point, said point being the intersection of the southern right-of-way margin of U.S. 19-23 and the existing City Limit boundary of the City of Asheville; thence in a southeasterly direction following said City Limit boundary a distance of approximately 3,960 feet to a point, said point being 10 feet east of the eastern right-of-way margin of Sand Hill Road (SR 3412); thence in a southwesterly direction following a line 10 feet east of the eastern right-of-way margin of Sand Hill Road and running parallel with said right-of-way margin and crossing Interstate 40, a distance of approximately 4,380 feet to a point 10 feet south of the southern right-of-way margin of I-40; thence in a westerly direction following a line 10 feet south of the southern right-of-way margin of I-40 and running parallel with said right-of-way margin, a distance of approximately 4,540 feet to the intersection of said line with the southern right-of-way margin of Southern Railroad; thence in a northwesterly direction crossing Southern Railroad and U.S. 19-23, a distance of approximately 690 feet to a point 10 feet north of the northern right-of-way margin of U.S. 19-23 said point also being 10 feet northwest of the southwest corner of Lot 67, Sheet 23, Lower Hominy Ward; thence in an easterly direction following a line 10 feet north of the northern right-of-way margin of U.S. 19-23 and running parallel with said right-of-way margin, a distance of approximately 730 feet to a point, said point being 10 feet west of the western right-of-way margin of Old

Haywood Road (SR 1404); thence in a northerly direction following a line 10 feet west of the western right-of-way margin of Old Haywood Road and running parallel with said right-of-way margin, a distance of approximately 2,130 feet to a point, said point being 10 feet north of the northern right-of-way margin of Starnes Cove Road (SR 1255); thence in an easterly direction following a straight line across Old Haywood Road, a distance of approximately 70 feet to a point being 10 feet north of the northern right-of-way margin of Old Starnes Cove Road; thence in an easterly direction following a line 10 feet north of the northern right-of-way margin of Old Starnes Cove Road and running parallel with said right-of-way margin, a distance of approximately 830 feet to a point at which said line merges with a private road; thence in a southeasterly direction following a line 10 feet north of the northern right-of-way margin of said private road and running parallel with said right-of-way margin, a distance of approximately 980 feet to a point 10 feet west of the western right-of-way margin of U.S. 19-23; thence in a northwesterly direction following a line 10 feet west of the western right-of-way margin of U.S. 19-23 and running parallel with said right-of-way margin a distance of approximately 440 feet to a point at which said line intersects the western right-of-way margin of Southern Railroad; thence in a northerly direction following the western right-of-way margin of Southern Railroad a distance of approximately 1,760 feet to the Asheville City Limits; thence following the Asheville City Limits in an easterly direction a distance of approximately 1,070 feet to the point of BEGINNING.

3. The same description was used by Respondent City in its published Notice of Hearing relative to the proposed annexation.

4. Notwithstanding the aforesaid "metes and bounds" description contained in the annexation ordinance, the Court finds that:

(a) The purported description, among other things, calls for the new boundary to the property intended to be annexed to follow a line 10 feet north of the northern right-of-way margin of a private road; a distance of approximately 980

feet from the end of Old Starnes Cove Road to U.S. Highway 19-23. The width of the right-of-way of said road cannot be ascertained; in addition, said road splits and forks into two branches, and the branch being referred to in the "metes and bounds" description is not capable of determination.

(b) Said description calls for lines of estimated and indeterminate distances, to points that cannot reasonably be determined.

5. The area intended to be annexed is not reasonably ascertainable on the ground by reference to the "metes and bounds" description contained in the ordinance.

Based on those findings of fact, Judge Jolly reached the following pertinent conclusions of law:

1. In its annexation ordinance, the City of Asheville was required, by North Carolina G.S. Sec. 160A-49(e)(1), to describe the external boundaries of the area to be annexed by "metes and bounds."

2. Further, in its Notice of Hearing relative to the proposed annexation the City of Asheville also was required, by North Carolina G.S. Sec. 160A-49(b)(2), to "describe clearly the boundaries of the area under consideration."

3. The description of the external boundaries of the property to be annexed contained in Ordinance No. 1217 [sic] substantially fails to comply with the requirement of a "metes and bounds" description of the property. Further, it substantially fails to comply with the requirement that the proposed boundaries be "clearly" described in the Notice of Hearing.

4. Except as hereinbefore provided, Respondent City complied with the requirements of G.S. Sec. 160A-45, *et seq.*

5. Accordingly, the annexation ordinance materially fails to comply with the requirements of G.S. Sec. 160A-49, and said ordinance, and the annexation proceeding it supports, are invalid and void.

First, we address the question of whether Judge Jolly's findings and conclusions with respect to the adequacy, or validity, of

the boundary description (used in the notice of hearing and the ordinance) are supported by the record that was before him. The notice of hearing contained the metes and bounds description appearing in the trial court's order and the following paragraph:

The report of plans for extending services to said territory required in Chapter 160A, Section 47 of the General Statutes of North Carolina will be available for public inspection of the office of the City Clerk at least fourteen (14) days prior to the date of said public hearing.

The record discloses that the report referred to in the notice included reference to three maps located in the office of the City Planning Department on the fifth floor of the City Hall, as follows:

Map 1

Existing City Limits

Proposed Annexation Boundary

Existing Land Use

Map 2

Existing City Limits

Proposed Annexation Boundary

Existing and Proposed Water Lines

Map 3

Existing City Limits

Proposed Annexation Boundary

Existing and Proposed Sewer Lines

The record shows that all three of the maps referred to in the plans follow in substantial detail the metes and bounds description by reference to and depiction of public roads and highways, railroads, and existing city limits boundaries, all recognizable monuments. While we recognize that the reference used in the metes and bounds description to the "right-of-way" of a private road was unfortunate, the location of that road is clearly shown on the maps. Additionally, the testimony of one of petitioners'

witnesses, Wayne Cooper, through whose land the private road runs, indicates that Mr. Cooper clearly understood where the boundary line was with respect to such road; that the road had previously (and for many years) been used by the public; and that he clearly understood which portions of his property were within or without the proposed boundary. It is appropriate to note at this point that the same map boundary used and established in the notice of hearing was used in the ordinance when adopted.

Our appellate courts, in reviewing annexation procedures, have consistently held that substantial compliance is all that is required in meeting the boundary requirements set forth in the statutes. *See Moody v. Carrboro,* 301 N.C. 318, 271 S.E. 2d 265 (1980), *reh. denied,* 301 N.C. 728, 274 S.E. 2d 230; *Conover v. Newton,* 297 N.C. 506, 256 S.E. 2d 216 (1979); *McKenzie v. High Point, supra,* and cases cited therein. We are persuaded that the metes and bounds description and the maps provided a boundary description which could be established on the ground in substantial compliance with the applicable statutes and that Judge Jolly erred in his findings and conclusions to the contrary.

Additionally, we note that Judge Jolly's order contained no finding or conclusion that the irregularities he saw in the boundary description had "materially prejudiced the substantive rights of any of the petitioners." G.S. 160A-50(g)(1). *See In re Annexation Ordinance,* 303 N.C. 220, *supra.* We also note that none of the evidence adduced by petitioners at trial would support any such finding or conclusion.

By cross-assignments of error, petitioners assert that the trial court erred in certain other respects which would have provided alternative support for his judgment.

[3] First, petitioners contend that the trial court erred in finding that Asheville, in fixing its new municipal boundaries, followed natural and topographical features where it was practical to do so. We disagree. Our courts have consistently held that in a case such as the one now before us, the enactment of the ordinance carries with it a presumption of validity and that the burden is on those who challenge the ordinance to show by competent and material evidence a failure to meet statutory requirements or an irregularity that materially prejudices their substantial rights. *In re Annexation Ordinance,* 303·N.C. 220, *supra; In re Annexation*

*Ordinance,* 296 N.C. 1, 249 S.E. 2d 698 (1978). While petitioners' evidence in this case did tend to establish the presence of topographical features, such as ridge lines, and natural boundaries, such as creeks, near the new boundaries, none of their evidence spoke to the issue of the practicality of the use of such features nor to how they may have been prejudiced by the non-use of such features. This assignment is overruled.

In their next two cross-assignments of error, petitioners contend that the trial court erred in failing to find that Asheville had failed to comply with statutory requirements with respect to plans for extension of water and sewer service and fire protection in the annexed area. We have carefully reviewed the record and conclude that petitioners failed to meet their burden of showing substantial non-compliance with the statutory requirements as to these services, and that the evidence, in fact, reflects substantial compliance. These assignments are overruled.

[4] In another assignment, petitioners contend that the trial court erred in failing to find that Asheville did not comply with the provision of G.S. 160A-47(3) in failing to include public transportation and parks and recreation in its plans for extension of services to the annexed area. The statute, in pertinent part, is as follows:

Sec. 160A-47. *Prerequisites to annexation; ability to serve; report and plans.*

A municipality exercising authority under this Part shall make plans for the extension of services to the area proposed to be annexed and shall, prior to the public hearing provided for in G.S. 160A-49, prepare a report setting forth such plans to provide services to such area. The report shall include:

. . .

(3) A statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation. Specifically, such plans shall:

a. Provide for extending police protection, fire protection, garbage collection and street maintenance services to the area to be annexed on the date of annexation on substan-

tially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation. If a water distribution system is not available in the area to be annexed, the plans must call for reasonably effective fire protection services until such time as waterlines are made available in such area under existing municipal policies for the extension of waterlines.

b. Provide for extension of major trunk water mains and sewer outfall lines into the area to be annexed so that when such lines are constructed, property owners in the area to be annexed will be able to secure public water and sewer service, according to the policies in effect in such municipality for extending water and sewer lines to individual lots or subdivisions.

. . .

We hold that the legislative intent expressed in G.S. 160A-47(3) is clear, that it requires extension of a variety of municipal services, all of which are required for the public health and safety, and that public transportation and parks and recreational facilities do not fall within this classification of service. This assignment is overruled.

Finally, petitioners contend that the provisions of Chapter 160A under which this annexation was accomplished deny them equal protection of the law, in violation of the constitutions of the United States and the State of North Carolina and that the trial court erred in not making such a conclusion. As petitioners concede, this issue was considered and answered against their position by our Supreme Court in *Texfi Industries v. City of Fayetteville*, 301 N.C. 1, 269 S.E. 2d 142 (1980). This assignment is overruled.

For the reasons stated, the judgment of the trial court must be reversed.[1]

Reversed.

---

1. The result we have reached does not require us to reach the question raised by Asheville as to whether the trial court exceeded its authority by declaring the ordinance to be null and void and that his authority was limited to remand to the municipal governing authority for statutory compliance.

Judge BECTON concurs.

Judge EAGLES concurs separately.

Judge EAGLES concurring in result.

I am concurring in the result reached by the majority. I wish to express a different position on the issue of whether petitioners' method of service of process on respondent was proper.

G.S. 160A-50(b) is a specific statute regulating service of process procedure in annexation suits against municipalities, while G.S. 1A-1, Rule 4(j)(5)a regulates service of process upon local governments in general. "Where there are two provisions in a statute, one of which is special or particular and the other general, which, if standing alone, would conflict with the particular provision, the special will be taken as intended to constitute an exception to the general provisions, as the General Assembly is not to be presumed to have intended a conflict." *Utilities Comm. v. Electric Membership Corp.*, 3 N.C. App. 309, 164 S.E. 2d 889 (1968), *citing Davis v. Granite Corporation*, 259 N.C. 672, 131 S.E. 2d 335 (1963).

Even though I am persuaded that G.S. 160A-50(b) controlled the method of service of process in the case *sub judice*, since it is the more specific statute, I still find petitioners' service of process by certified mail permissible and valid under the facts of this case. "It is generally held that slight irregularities will not invalidate annexation proceedings if there has been substantial compliance with all essential provisions of the law [citations omitted]. 'Absolute and literal compliance with a statute enacted describing the conditions of annexation is unnecessary; substantial compliance only is required . . . . The reason is clear. Absolute and literal compliance with the statute would result in defeating the purpose of the statute in situations where no one has been or could be misled.'" *In re Annexation Ordinance*, 278 N.C. 641, 180 S.E. 2d 851 (1971), *quoting State v. Town of Benson, Cochise County*, 95 Ariz. 107, 108, 387 P. 2d 807, 808. Unlike the service of process requirements of G.S. 1A-1, Rule 4, which must be strictly followed in order to obtain proper service of process, *Lynch v. Lynch*, 302 N.C. 189, 274 S.E. 2d 212 (1981), the requirements of G.S. 160A-50(b), need only be substantially complied with.

Respondent's claim of injury will have merit only where the irregularity in the proceedings materially prejudiced respondent's substantive rights. *In re Annexation Ordinance*, 303 N.C. 220, 278 S.E. 2d 224 (1981). The petition was sent by certified mail addressed to the City of Asheville in care of its City Manager, and was received by the City's mail clerk who signed the return receipt acknowledging its delivery. During the hearing on respondent's motion to dismiss, Lawrence Hoote, a 28 year veteran of the Asheville Post Office, testified that the only distinction between registered and certified mail was that the post office retained a record of the transactions in the former but not in the latter. Since respondent can show no material prejudice to their substantive rights where they actually received timely notice of the petition, I find that the method of service of process was in substantial compliance with G.S. 160A-50(b) and therefore valid.