ASHLEY v. THE CITY OF LEXINGTON

No. COA10-314

(Filed 4 January 2011)

RALPH ASHLEY, JEAN ASHLEY, ALEXANDER AUGOUSTIDES, CAROLYN AUMAN, LUTHER T. BARBER, SYLVIA BARBER, D.H. BEAM, JAY BELK, PAM BELK, ANTHONY J. BOLO, JR., MARION J. BONNOM, KEITH BOST, SHERRY BOST, RICKY BOYD, MICHAEL P. BRALKOWSKI, RHONDA W. BRALKOWSKI, JIM BUCHANAN, BETSY BUCHANAN, PEGGY BURCHETT, JERRY BURKHART, JERI BURKHART, BOBBY BYERLY, PATSY BYERLY, JIM CAMERON, BETSY CAMERON, BRAD CATES, JODI CATES, CORY COOPER, AMANDA COOPER, WILLIAM H. COX, DENNIS JEFFREY COOPER, NAOMA WAGNER CRABTREE, TRUSTEE, SHIRLEY E. CROTTS, LARRY H. CROTTS, PERRY K. CROTTS, HENRY C. CROUSE, KAREN CROUSE, DAN R. DAUGHETY, SUSAN G. DAUGHETY, JUDITH M. DAVIS, BOBBY N. DICKERSON, ELLEN F. DICKERSON, ED DROZD, NANCY DROZD, RONALD DURHAM, DENISE DURHAM, DAVID NATHANIEL DURRELL, MELADIE DURRELL, RICKY EVERHART, DANNY EVERHART, MELISSA EVERHART, LISA EVERHART, TED G. EVERHART, BETTIE H. EVERHART, JOHN EVERS, GAIL EVERS, ROBERT G. FLOYD, EMMA R. FLOYD, JOHN FRANK, TRUDY FRANK, JIMMY FREEMANN, LYNNE FREEMANN, EDWARD FRIEDMANN, BERTHA FRIEDMANN, CARL GARRISON, ROBERT GREER, JANICE GREER, THOMAS O. GRUBBS, JR., TONY HARTLEY, NANCY HARTLEY, CHARLES HARTSOOK, RUTH HARTSOOK, MICHAEL V. HIGGINS, PATRICIA A. HIGGINS, RICKY L. HILL, DEBORAH Y. HILL, GIG HILTON, SUSAN HILTON, JERRY HUNT, MARTHA HUNT, R. FRANK HUNTER, MARGARET HUNTER, CRAIG IDOL, GINA IDOL, ROBERT D. KETCHIE, FAYE B. KETCHIE, SANDRA KNAPP, PATRICK KNAPP, CONNIE MASON LAUGHTER, CLINTON LeGETTE, MARY LOU LeGETTE, LLOYD LEONARD, KIM LEONARD, PHIL LOHR, MILTON R. LOMAX, RANDALL J. LONG, BETTY L. MASON, PAUL MARTIN, WANDA MARTIN, JERRY MAYES, VICKI MAYES, PHILLIP McKINNEY, BEVERLY McKINNEY, BETTY C. MICHAEL, ROY STEVEN MICHAEL, JOHNNY MORGAN, PAULETTE MORGAN, MIKE MORGAN, RUFFIN MORGAN, KENNETH D. MOTLEY, DON MYERS, JUDY MYERS, JAN MYERS, TONYA MYERS, MATT O'BRYANT, MICHELLE O'BRYANT, ANN R. PARKER, TIM PALMER, SHIRLEY PARKS,

1

IN THE COURT OF APPEALS

## ASHLEY v. CITY OF LEXINGTON

[209 N.C. App. 1 (2011)]

STEVEN PARKS, GLENDA PARKS, WATTS B. PARRISH, LARRY KIGER POPE, JR., GAY PLEASANTS, RICHARD G. REESE, BETTY REESE, LEON L. RIVES, II, CATHERINE N. ROBERTSON, RAFAEL ROCA, T. SAINTSING, SANDRA SAINTSING, MARVIN SANDIFER, CAROLE P. SANDIFER, ELSIE SAUL, GLENN A. SCOTT, CYNTHIA S. SCOTT, RICK SMITH, RICK SMITH, GWINNIE SMITH, STEVEN SMITH, LAURA SMITH, VERONICA SROKA, LYNN STEWART, JANE STEWART, JACKIE SHOAF, JERRY SHOAF, CAROL STOTT, DAVID STOTT, TONY TOWNSEND, CAROLYN J. TOWNSEND, WILLIAM F. TUCKER, BETTY S. TUCKER, BRIAN TURLINGTON, JENNIFER TURLINGTON, WILLIE VAUTER, VONCEIL VAUTER, JUNE G. WALDEN, CURTIS JAE WALDEN, KATHY D. WALL, DOUG WALSER, MARY WALSER, GARY G. WIKSTROM, BUSTER B. WILLIS, BRENDA P. WILLIS, BEN WILSON, SHELLY WILSON, WALTER L. WILSON, ED WORKMAN, ANITA WORKMAN, JOE T. YARBROUGH, FAYE YOUNG, LOUISE W. YOUNG, PETITIONERS,

v.

THE CITY OF LEXINGTON, A NORTH CAROLINA MUNICIPALITY, RESPONDENT.

---

ELAINE S. ALEXANDER, LINDA BECK, MISTY CLODFELTER, JUDI L. COCHRAN, LOUIS C. COLEMAN, LOUISE S. COLEMAN, RUBY LOUISE CROSS, WILLIAM CROSS, LORETTA CROTTS, SHELL CROTTS, MARTY F. CURRY, GREG D. DYSON, MARK EVANS, JANET EVERHART, LORRAINE H. FURR, LORRAINE H. FURR, RICHARD E. FURR, ROY LEE GATES, BARBARA GATES, GARY GOBBLE, KAREN GOBBLE, GRETA W. HAMM, JOHN CHARLES HAMM, BETTY B. HONBAIER, TERRY HUGHES, ALLISON M. KEENE, CAROLYN LOMAN, THAMAR DARRELL LOMAN, HELEN KIVETT, CAROLYN S. McCARN, JOHNNY N. McCARN, LEROY McCARN, RUBY McCARN, DEBORAH MEDLIN, PAUL MEDLIN, CARLTON E. MOBEY, BILLY RAY PLEASANT, HARVEY POTTER, VICTOR SMITH, PAUL R. STOGNER, SARAH STOGNER, VERA F. WALDEN, DORIS R. WALSER, SANDRA H. WALKER, SHIRLEY F. WEAVER, JEFFREY K. WHITE, ELWOOD YOUNTS, NAOMI R. YOUNTS, PETITIONERS,

v.

THE CITY OF LEXINGTON, A NORTH CAROLINA MUNICIPALITY, RESPONDENT.

---

SOY KHOUN, SUSAN LONG, MELIDA SUZY MELGAR, BOBBY D. WALSER, PETITIONERS,

v.

THE CITY OF LEXINGTON, A NORTH CAROLINA MUNICIPALITY, RESPONDENT.

---

**1. Cities and Towns— involuntary annexation—statutory procedure and requirements**

The trial court did not err in an involuntary annexation case by concluding that respondent complied with statutory procedure and the requirements of N.C.G.S. §§ 160A-47(1), 160A-47(3)(b), and 160A-49(a), (b), and (e)(1). The imposition of taxes did not constitute material prejudice. Further, petitioners advanced no compelling argument that any procedural irregularities in the annexation process resulted in material prejudice.

**2. Cities and Towns— annexation—sufficiency of metes and bounds descriptions**

The trial court erred by granting summary judgment in favor of petitioners on its claim that the legal description of the annexation area included in the ordinances were not sufficient metes and bounds descriptions as required by N.C.G.S. § 49(e)(1). The tax parcel identification numbers included in the ordinances contained all the information needed to both accurately identify and place the lots and the annexation areas' boundaries on the relevant tax maps and on the ground. Further, the trial court's order failed to show petitioners suffered any material prejudice.

**3. Cities and Towns— annexation—request for extension of sewer service on accelerated basis**

The trial court erred by granting petitioners' motion for summary judgment with respect to the sufficiency of respondent's plan to extend sanitary sewer service to the annexation areas on an accelerated basis to those petitioners who submitted requests. Respondent's actions were consistent with its existing policy which did not require it to pay to extend sewer service to petitioners.

Appeal by Petitioners and Respondent from orders entered 15 December 2009 by Judge Kevin M. Bridges in Superior Court, Davidson County. Heard in the Court of Appeals 15 September 2010. Pursuant to Rule 40 of the North Carolina Rules of Appellate Procedure, these cases were consolidated for hearing as they involve common questions of law.

*The Brough Law Firm, by Robert E. Hornik, Jr., for Petitioners.*

*Parker, Poe, Adams & Bernstein L.L.P., by Anthony Fox, Benjamin Sullivan, and Susan W. Matthews; and Phyllis Penry, for Respondent.*

McGEE, Judge.

This case is before our Court on appeal from a judicial review of three annexation ordinances (the ordinances) by the Superior Court of Davidson County. By agreement of the parties, all three appeals have been combined for hearing. The parties to this appeal are the City of Lexington, North Carolina (Respondent) and certain residents and owners of property located in the three areas Respondent sought to annex (Petitioners). Respondent and

Petitioners appeal orders partially granting and partially denying both parties' motions for summary judgment.

Respondent passed a resolution on 14 April 2008 (the resolution) declaring its intent to annex three areas of land bordering Respondent. These areas are known as the Old Salisbury Road Annexation Area, the East Center Street Annexation Area, and the Biesecker Road Annexation Area (collectively, the annexation areas). The East Center Street Annexation Area includes a land bridge connecting the developed area to be annexed to the city boundary. By statute, the land bridge in the East Center Street Annexation Area cannot exceed twenty-five percent of the total area to be annexed, and must be adjacent on at least sixty percent of its boundary to a combination of the city boundary and the developed portion of the annexation area. All three annexation areas (excluding the land bridge) are developed but lack sewer service. The resolution described the areas to be annexed by metes and bounds descriptions that rely, in part, on thirteen-digit tax identification numbers for certain lots in the area, to locate points on the boundary of the areas to be annexed. The resolution further relied on four maps and stated that the Davidson County Clerk's Office had additional maps and a list of people identified as owning property in the annexation areas. Respondent sent notice of the resolution to every known property owner in the annexation areas and published the resolution and maps twice in the local newspaper.

Respondent adopted a report (the report) on the annexations and made it available to the public on 28 April 2009. Twenty-three maps of the annexation areas were included in the report. The report also included a plan for extending sewer services to the annexation areas. Respondent held a public meeting to explain the report and respond to questions on 3 June 2008. Respondent then held a public hearing on the annexations on 8 July 2008.

Respondent adopted the three ordinances on 21 July 2008. The ordinances contained the same descriptions of the areas to be annexed as those included in the resolution, and also partially relied on the thirteen-digit tax record numbers to help locate the boundaries of the annexation areas. The ordinances were to be effective as of 30 June 2009, but were stayed pending the outcome on appeal.

N.C. Gen. Stat. § 160A-47(3)(c) (2009) provides that, if construction of sewer outfall lines is required, construction must be completed within two years of the effective date of annexation.

Secondary lines or extensions—those connecting the main outfall lines to developed property—are to be built "according to the policies in effect in such municipality for extending water and sewer lines to individual lots or subdivisions." N.C.G.S. § 160A-47(3)(b).

According to Respondent's existing policy, residents may petition Respondent for sewer connection. Should Respondent not have funds available to complete the request, Respondent may either deny the petition or negotiate with the petitioning residents in order to reach an agreement on payment for the connection. Historically, prior to the start of any work on a connection, Respondent has required petitioners to pay a percentage of the connection costs, ranging from fifty percent to one hundred percent of the costs.

For the three newly-annexed areas, Respondent committed to building all secondary lines at Respondent's expense within five years of annexation. Annexation residents were allowed to petition for accelerated sewer lines but Respondent had no funds budgeted for the costs of accelerated connection. Therefore, Respondent could either deny the request or negotiate connection costs with Petitioners. Respondent provided residents with printed request forms for accelerated sewer requests. The forms required residents to pay fifty percent of the connection costs in advance of construction and within fourteen days of being notified of the costs. If these terms were not met, Respondent would deny the accelerated sewer requests and connections would be established, without cost to residents, within five years of annexation.

A group opposing the annexation, Citizens United Against Forced Annexation, had residents place a sticker on the printed forms that stated: "I agree to the same water/sewer extension policy that is in effect for City residents pursuant to N.C. Gen. Stat. 160A-47(3)(B)." Respondent refused to accept forms bearing the stickers and so notified residents. After being informed of the denial of forms bearing the stickers, a group of residents went to City Hall and removed the stickers. Respondent still refused to accept any form that at one time had a sticker placed on it. Residents who submitted forms with the stickers were provided with new forms and were told they would need to fill out the new forms in order to request accelerated sewer services.

According to the report, by 15 July 2008, Respondent had received "148 valid forms signed by property owners within the annexation areas requesting that residential sewer line extensions be accelerated to be made available within two years of the effective

date of annexation[.]" Once Respondent received the forms, its Public Works Division calculated the costs of the connection and sent contracts to the property owners. The executed contracts, along with fifty percent of the costs, were to be returned within fourteen days. None of the residents who were notified of the costs sent Respondent an executed contract or payment. Therefore, Respondent did not schedule expedited sewer service connections for any property within the annexation areas.

Petitioners filed three petitions in Davidson County Superior Court seeking judicial review of the ordinances on 15 September 2008. Petitioners challenged the boundary descriptions of the areas to be annexed, alleging that the boundary descriptions were not proper metes and bounds descriptions. Petitioners further argued that Respondent's requiring fifty percent of payment of the costs of sewer service connections within fourteen days was not part of Respondent's existing policy regarding extension of sewer lines because this method constituted neither a rejection nor a negotiation.

Both parties moved for summary judgment on 9 November 2009. The trial court entered orders on 15 December 2009, granting: (1) Petitioners' motion contending that the legal descriptions of the annexation areas included in the ordinances were not sufficient metes and bounds descriptions; (2) Petitioners' motion contending Respondent's plan to extend sewer services to the annexation areas was not sufficient; (3) Respondent's motion contending that the descriptions of the annexation areas included in the resolution, the notices of the public meeting, and the public hearing were sufficient; (4) Respondent's motion contending that the maps in the report showing the present and proposed boundaries of Respondent and the annexation areas were sufficient; and (5) Respondent's motion contending that the East Center Annexation Area satisfied the statutory requirements. The orders further stipulated that the ordinances were to be remanded to correct irregularities in the legal description of the land and for correction of Respondent's plan for accelerated sewer service connections for property owners who submitted proper forms. Respondent and Petitioners appeal.

*Standard of Review*

Within 60 days following the passage of an annexation ordinance under authority of this Part, any person owning property in the annexed territory who shall believe that he will suffer material injury by reason of the failure of the municipal governing board

to comply with the procedure set forth in this Part or to meet the requirements set forth in G.S. 160A-48 as they apply to his property may file a petition in the superior court of the county in which the municipality is located seeking review of the action of the governing board.

N.C. Gen. Stat. § 160A-50(a) (2009). When a petitioner contests the passage of an annexation ordinance, N.C. Gen. Stat. § 160A-50 (2009) states that:

(f) [] The review shall be conducted by the [trial] court without a jury. The [trial] court may hear oral arguments and receive written briefs, and may take evidence intended to show either

(1) That the statutory procedure was not followed, or

(2) That the provisions of G.S. 160A-47 were not met, or

(3) That the provisions of G.S. 160A-48 have not been met.

(g) The [trial] court may affirm the action of the governing board without change, or it may

(1) Remand the ordinance to the municipal governing board for further proceedings if procedural irregularities are found to have materially prejudiced the substantive rights of any of the petitioners.

(2) Remand the ordinance to the municipal governing board for amendment of the boundaries to conform to the provisions of G.S. 160A-48 if it finds that the provisions of G.S. 160A-48 have not been met; provided, that the [trial] court cannot remand the ordinance to the municipal governing board with directions to add area to the municipality which was not included in the notice of public hearing and not provided for in plans for service.

(3) Remand the report to the municipal governing board for amendment of the plans for providing services to the end that the provisions of G.S. 160A-47 are satisfied.

(4) Declare the ordinance null and void, if the [trial] court finds that the ordinance cannot be corrected by remand as provided in subdivisions (1), (2), or (3) of this subsection.

N.C.G.S. § 160A-50. When reviewing an annexation ordinance:

Our review is limited to the following inquiries: "(1) Did [each] municipality comply with the statutory procedures? (2) If not, will [the opposing party] 'suffer material injury' by reason of the

municipality's failure to comply?" *In re Annexation Ordinance,* 278 N.C. 641, 647, 180 S.E.2d 851, 855 (1971). Where annexation proceedings "show *prima facie* that there has been substantial compliance with the requirements and provisions of the Act, the burden is upon [the opposing party] to show by competent evidence failure on the part of the municipality to comply with the statutory requirements as a matter of fact, or irregularity in proceedings which materially prejudice[s] the substantive rights of [the opposing party]."

*City of Kannapolis v. City of Concord,* 326 N.C. 512, 516, 391 S.E.2d 493, 496 (1990). Our Court has further stated:

The scope of judicial review of an annexation ordinance adopted by the governing board of a municipality is prescribed and defined by statute. . . . These statutes limit the court's inquiry to a determination of whether applicable annexation statutes have been substantially complied with. When the record submitted in superior court by the municipal corporation demonstrates, on its face, substantial compliance with the applicable annexation statutes, then the burden falls on the petitioners to show by competent and substantial evidence that the statutory requirements were in fact not met or that procedural irregularities occurred which materially prejudiced their substantive rights. "In determining the validity of an annexation ordinance, the court's review is limited to the following inquiries: (1) Did the municipality comply with the statutory procedures? (2) If not, will the petitioners suffer material injury thereby? (3) Does the area to be annexed meet the requirements of G.S. 160A-48 . . .?"

*Huyck Corp. v. Town of Wake Forest,* 86 N.C. App. 13, 15, 356 S.E.2d 599, 601 (1987) (citations omitted); *see also Norwood v. Village of Sugar Mountain,* 193 N.C. App. 293, 297-98, 667 S.E.2d 524, 527-28 (2008). Our Court has made clear that judicial review of an annexation ordinance is limited by statute:

G.S. 160A-50(f) provides that a court, in reviewing annexation proceedings, may take evidence intended to show either that the statutory procedure set out in G.S. 160A-49 was not followed, or that the provisions of either G.S. 160A-47 or 160A-48 were not met. The statutory procedure outlined in G.S. 160A-49 requires notice of a public hearing and sets out guidelines for the hearing which is to be held prior to annexation. G.S. 160A-47 requires the annexing city to prepare maps and plans for the services to be

provided to the annexed areas. G.S. 160A-48 sets out guidelines for the character of the area to be annexed.

The North Carolina Supreme Court and the Fourth Circuit Court of Appeals have made it clear that *G.S. 160A-50(f) limits the scope of judicial review to the determination of whether the annexation proceedings substantially comply with the requirements of the statutes referred to in G.S. 160A-50(f)*.

*Forsyth Citizens v. City of Winston-Salem*, 67 N.C. App. 164, 165, 312 S.E.2d 517, 518 (1984) (citations omitted) (emphasis added); *see also In re Annexation Ordinance*, 303 N.C. 220, 229-30, 278 S.E.2d 224, 230-31 (1981) (*Annexation Case I*).

The issues in this case were settled by summary judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." On a motion for summary judgment, "[t]he evidence is to be viewed in the light most favorable to the nonmoving party." When determining whether the trial court properly ruled on a motion for summary judgment, this court conducts a *de novo* review.

*Brown v. City of Winston-Salem*, 171 N.C. App. 266, 270, 614 S.E.2d 599, 602 (2005) (internal citations omitted).

### Petitioners' Appeal

[1] Petitioners' arguments on appeal rely on Petitioners' contention that "Respondent did <u>not</u> comply with statutory procedure and did not satisfy the requirements of N.C. Gen. Stat. § 160A-47(1), 160A-47(3)(b), and 160A-49(a), (b) and (e)(1)." Petitioners further argue that Respondent failed to adhere to the requirements of N.C. Gen. Stat. § 160A-48(d). Petitioners argue this Court should reverse certain rulings in the trial court's orders because Respondent violated N.C.G.S. § 160A-50 and Petitioners "have suffered, and will suffer, material injury in that they will be required to pay [Respondent] taxes and will be subject to [Respondent] regulations as a result of the involuntary annexation if it is not overturned."

Petitioners cite *Nolan v. Village of Marvin*, 360 N.C. 256, 624 S.E.2d 305 (2006), in support of their contention that taxes and regulations alone are sufficient to demonstrate material prejudice. We disagree.

[T]he holding in *Nolan* was based on the fact that the *only* services proposed to be extended to the area to be annexed were administrative services. The Village of Marvin had no plan to extend police, fire, waste collection or other services to the area to be annexed. Our Supreme Court held that the mere extension of administrative services provided no meaningful benefit to the area to be annexed.

*Pinewild Project Ltd. P'ship v. Village of Pinehurst,* —— N.C. App. ——, ——, 679 S.E.2d 424, 429 (2009) (internal citation omitted). In *Nolan*, our Supreme Court explained: "Those part-time administrative services, such as zoning and tax collection, simply fill needs created by the annexation itself, without conferring significant benefits on the annexed property owners and residents." *Nolan*, 360 N.C. at 262, 624 S.E.2d at 308-09. It was within this context, where the residents of the area to be annexed would be subjected to taxes without receiving any meaningful benefit, that our Supreme Court found the imposition of taxes to constitute material prejudice. We do not interpret *Nolan* to stand for the proposition that the imposition of taxes will always constitute material prejudice in any involuntary annexation. *See Nolan v. Town of Weddington,* 182 N.C. App. 486, 492, 642 S.E.2d 261, 265 (2007); *Annexation Case I,* 303 N.C. at 233, 278 S.E.2d at 233. Were we to so hold, the requirement that Petitioners demonstrate material prejudice would be rendered meaningless, as every annexation subjects those annexed to the taxes and regulations of the annexing municipality. The taxes the petitioners in *Nolan* would have been subjected to through annexation constituted material prejudice in that case because the petitioners would have received no material benefit in return. In the present case, Petitioners make no such argument, and we do not find *Nolan* controlling in this case. Because Petitioners advance no compelling argument that any procedural irregularities in the annexation process in this case will result in material prejudice, Petitioners fail to meet their burden on this issue. *Kannapolis,* 326 N.C. at 516, 391 S.E.2d at 496. We will, however, consider whether Respondent complied with N.C. Gen. Stat. § 160A-48(d) (2009) because failure to comply with this section could invalidate the annexation for "failure on the part of the municipality to comply with the statutory requirements as a matter of fact[.]" *Kannapolis,* 326 N.C. at 516, 391 S.E.2d at 496.

Petitioners argue that the trial court erred because the size of the land bridge connecting the developed portion of the East Center Street Annexation Area to Respondent exceeded the size allowed by

N.C.G.S. § 160A-48(d). This argument clearly has no merit. N.C.G.S. § 160A-48(d) states that any required land bridge may not exceed twenty-five percent of the total annexation area. Petitioners contend that the land bridge in the present case "constitutes about 31% of the East Center Street Annexation Area's [173.50] total acres." Petitioners' claim—that the land bridge in question constitutes over twenty-five percent of the total annexation area—appears to originate from selective readings of the report and the ordinances. In a portion of the report labeled "Developed for Urban Purposes" that pertained to certain requirements for land use pursuant to N.C.G.S. § 160A-48(c)(3), Respondent included a breakdown of acres for the developed portion of the East Center Street Annexation Area for the purposes of showing the requirements of N.C.G.S. § 160A-48(c)(3) had been met.[1] In a separate section of the report entitled "Land Bridge," Respondent explained the requirements of N.C.G.S. § 160A-48(d), including the requirement that the "land bridge connection may not exceed 25% of the total area to be annexed." In that section, Respondent stated: "Finally, the total area of the land bridge, 51.39 acres is 22.85% of the total 224.89 acres in the East Center Street Area, which is less than the 25% maximum." The ordinance for the East Center Street Area includes the same information. The 224.89-acre figure is clearly arrived at by adding the 51.39 acres constituting the land bridge to the 173.50 acres constituting the developed area relevant to N.C.G.S. § 160A-48(c)(3). Because 51.39 acres constitutes less than twenty-five percent of 224.89, the total acreage to be annexed, the trial court did not err in granting Respondent's motion for summary judgment on this issue. Petitioners' arguments are without merit.

### *Respondent's Appeal*

[2] Respondent first argues that the trial court erred in granting summary judgment in favor of Petitioners' claim that the legal description of the annexation areas included in the ordinances were not sufficient metes and bounds descriptions. We agree. Respondent argues that any failure to adequately describe the area to be annexed

---

1. N.C.G.S. § 160A-48(c)(3) requires that the developed portion of an area to be annexed "[i]s so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts three acres or less in size."

pursuant to N.C. Gen. Stat. § 49(e)(1) is a procedural error and, therefore, Petitioners must show that they were materially prejudiced thereby. Petitioners argue that our Court has already held that a border description relying on tax parcel identification numbers can be insufficient to meet the description requirement of N.C. Gen. Stat. § 49(e)(1) when the corresponding tax maps were not incorporated into the ordinances by reference. *Blackwell v. City of Reidsville*, 129 N.C. App. 759, 762-63, 502 S.E.2d 371, 374 (1998). We do not find *Blackwell* controlling in this case.

In *Blackwell*, our Court held "that the use of the tax maps, without incorporation by reference, was not a sufficient metes and bounds description." *Id.* at 763, 502 S.E.2d at 374. In *Blackwell*, there was nothing to indicate that the tax identification numbers contained all the necessary information to identify the relevant tax maps, nor any lot's position on those maps. The *Blackwell* Court found that "there [was] nothing in the descriptions or maps in the ordinance that identify [the] numbers in any way." *Id.* at 762, 502 S.E.2d at 374. In the present case, Respondent presented uncontradicted evidence from two licensed surveyors that the tax parcel identification numbers included in the ordinances contained all the information needed to both accurately identify and place the lots and the annexation areas' boundaries on the relevant tax maps, and on the ground. In an affidavit, licensed surveyor David Craver (Craver) stated the following:

> I am personally familiar with how tax maps and other real property records are organized, labeled, and indexed in the Davidson County Register of Deeds and the Davidson County Tax Office. At the Davidson County Tax Office, the parcel ID number assigned to each parcel specifies on which tax map that parcel can be found. For example, if provided the parcel ID number 1135000000003, I have enough information to identify and locate the County tax map where that parcel is found and to locate the parcel on that map. If a legal description identifies parcels using Davidson County parcel ID numbers, the parcels can be identified and located.

Craver further stated that the descriptions included in the ordinances were "all valid metes and bounds descriptions[,]" and could "be used to locate the external boundary of that area, both on a survey map and on the ground."

Licensed surveyor Samuel Leonard (Leonard) executed an affidavit that was in agreement with the statements by Craver as

quoted above. Leonard further stated that "any person, if provided with a specific parcel ID number, can identify and locate the County tax map where that parcel is found and locate that parcel on that tax map." Leonard explained:

> Each Davidson County parcel is assigned a specific 13-digit parcel ID number which can be used to locate each particular parcel on a Davidson County tax map. The first two digits in the parcel ID number refer to the Davidson County township in which the parcel is located. The next three digits refer to the specific County tax map containing that parcel. The sixth digit in the parcel ID number denotes whether the parcel is located in a platted subdivision. Specifically, a letter in the sixth position means the parcel is in a subdivision; a number means it is not. The next three digits specify the block on the tax map where the parcel can be found, and the final four digits refer to the lot in that block.

Leonard further explained that all this information was available to the public. We hold that the information contained in the Davidson County tax parcel ID numbers specifically identified the location of those parcels on the tax maps and on the ground. The inclusion of these tax parcel ID numbers effectively incorporated the corresponding Davidson County tax maps. The purpose and function of the ID numbers is to locate the parcels on the appropriate maps and these ID numbers contain information from which anyone can locate the corresponding parcels on the appropriate maps. We hold the descriptions provided in the ordinances were sufficient to meet the requirement of N.C.G.S. § 49(e)(1).

We further note that the *Blackwell* Court did not conduct a prejudice analysis in reaching its decision. Our Court has previously held:

> Our appellate courts, in reviewing annexation procedures, have consistently held that substantial compliance is all that is required in meeting the boundary requirements set forth in the statutes. We are persuaded that the metes and bounds description and the maps provided a boundary description which could be established on the ground in substantial compliance with the applicable statutes and that [the trial court] erred in [its] findings and conclusions to the contrary.

> Additionally, we note that [the trial court's] order contained no finding or conclusion that the irregularities he saw in the boundary

description had "materially prejudiced the substantive rights of any of the petitioners." G.S. 160A-50(g)(1).

*In re Annexation Ordinance*, 62 N.C. App. 588, 598, 303 S.E.2d 380, 385 (1983) (*Annexation Case II*) (internal citations omitted). Our appellate courts have repeatedly required a showing of prejudice even when the statutory requirements of N.C.G.S. § 160A-49 have not been met:

> Petitioners have failed to indicate specifically how the metes and bounds description published in the *Asheville Citizen-Times* varied from the metes and bounds description contained in the annexation ordinance and, more importantly, have failed to indicate that this alleged variance prejudiced them in any manner. *See In re Annexation Ordinance (Winston-Salem)*, 303 N.C. 220, 233, 278 S.E.2d 224, 232 (1981).

*Matheson v. City of Asheville*, 102 N.C. App. 156, 171, 402 S.E.2d 140, 148-49 (1991); *see also Sonopress, Inc. v. Town of Weaverville*, 149 N.C. App. 492, 507-08, 562 S.E.2d 32, 40-1 (2002); *In re Durham Annexation Ordinance*, 69 N.C. App. 77, 85, 316 S.E.2d 649, 654-55 (1984); *In re Annexation Ordinance*, 278 N.C. 641, 646-47, 180 S.E.2d 851, 855 (1971) (*Annexation Case III*); *Burnette v. City of Goldsboro*, ——, N.C. App. ——, 654 S.E.2d 834, 2008 N.C. App. LEXIS 129, 4 (N.C. Ct. App. Jan. 15, 2008), *review denied*, 362 N.C. 469, 665 S.E.2d 737 (2008); *Hall v. City of Asheville*, —— N.C. App. ——, 664 S.E.2d 77, 2008 N.C. App. LEXIS 1461, 9-10 (N.C. Ct. App. Aug. 5, 2008), *review denied*, 363 N.C. 125, 673 S.E.2d 130 (2009).

We note that the trial court's orders granting summary judgment in favor of Petitioners on this issue included no suggestion that Petitioners had suffered any material prejudice. *Annexation Case II*, 62 N.C. App. at 598, 303 S.E.2d at 385. "We also note that none of the evidence adduced by petitioners at trial would support any such finding or conclusion." *Id.* at 598, 303 S.E.2d at 386. As we have stated above, the mere fact that Petitioners will be subject to new taxes is insufficient to show prejudice. *See Nolan*, 182 N.C. App. at 492, 642 S.E.2d at 265; *Annexation Case I*, 303 N.C. at 233, 278 S.E.2d at 233. We therefore reverse this portion of the trial court's orders and remand for further action consistent with our holding.

[3] Respondent next argues that the trial court erred in granting Petitioners' motion for summary judgment with respect to the "sufficiency of Respondent's plan to extend sanitary sewer service to the

Annexation Area[s] on an accelerated basis to those Petitioners who submitted requests[.]" We agree.

N.C.G.S. § 160A-47 required Respondent to issue:

(3) A statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation. Specifically, such plans shall:

. . . .

b. Provide for extension of major trunk water mains and sewer outfall lines into the area to be annexed so that when such lines are constructed, property owners in the area to be annexed will be able to secure public water and sewer service, *according to the policies in effect in such municipality for extending water and sewer lines to individual lots or subdivisions.* If requested by the owner of an occupied dwelling unit or an operating commercial or industrial property in writing on a form provided by the municipality, which form acknowledges that *such extension or extensions will be made according to the current financial policies of the municipality for making such extensions,* and if such form is received by the city clerk no later than five days after the public hearing, provide for extension of water and sewer lines to the property or to a point on a public street or road right-of-way adjacent to the property *according to the financial policies in effect in such municipality for extending water and sewer lines.* If any such requests are timely made, the municipality shall at the time of adoption of the annexation ordinance amend its report and plan for services to reflect and accommodate such requests, if an amendment is necessary. *In areas where the municipality is required to extend sewer service according to its policies,* but the installation of sewer is not economically feasible due to the unique topography of the area, the municipality shall provide septic system maintenance and repair service until such time as sewer service is provided to properties similarly situated.

c. If extension of major trunk water mains, sewer outfall lines, sewer lines and water lines is necessary, set forth a proposed timetable for construction of such mains, outfalls and lines as soon as possible following the effective date

of annexation. In any event, the plans shall call for construction to be completed within two years of the effective date of annexation.

     d. Set forth the method under which the municipality plans to finance extension of services into the area to be annexed.

N.C.G.S. § 160A-47 (emphasis added). N.C. Gen. Stat. § 160A-47.1 (2009) mandates that if a municipality required to extend sewer services pursuant to N.C.G.S. § 160A-47 intends to implement any new ordinance or policy .

> substantially diminishing the financial participation of [that] municipality in the construction of . . . sewer facilities [that] ordinance or policy [must have become] effective at least 180 days prior to the date of adoption by the municipality of the resolution giving notice of intent to consider annexing the area under G.S. 160A-49(a).

In the present case, Respondent did not adopt or implement any new ordinances or policies in the 180 days prior to the adoption of its resolution. At all relevant time periods in this case, Respondent's policy concerning requests for sewer extensions was as follows:

> A. All requests for water and/or sewer extensions must be originated by petition of the applicants desiring service. Separate petitions are required for water and sewer, and either may be extended without the other.

> B. *Although [Respondent] is dedicated to the concept of making such extensions, [Respondent] shall not be responsible for such extensions if funds are not available.* [Respondent] *shall be entitled* to consider and implement one of the following options.

> 1. [Respondent] may deny the petition.

> 2. [Respondent] may negotiate with the petitioners and reach an agreement satisfactory to both parties.

> C. Publicly maintained and dedicated streets or outfall lines within the city limits qualify for water and sewer extensions. Extensions will be made on these streets and outfalls when the petitions are received and approved by the Lexington Utilities Commission and the City Council. Design and cost estimates will be prepared upon receipt of a valid petition and submitted to the Lexington Utilities Commission for review and recommendation.

Then, *subject to the availability of funds for [Respondent's] cost,* final design will be completed and the extension scheduled for construction. After completion of the extensions, [Respondent] will notify the petitioners that applications for service connection can be made. All participants must pre-pay taps fees and sign billing agreements.

(Emphasis added.)

Respondent argues that because it offered to pay fifty percent of the costs of extending sewer service to any resident on an expedited basis, its offer did not "substantially diminish[] the financial partici- pation" of Respondent, and therefore did not implicate N.C.G.S. § 160A-47.1. According to Respondent, this is because Respondent had never before offered to pay more than fifty percent of the costs of extending sewer service on an expedited basis and therefore Respondent's financial participation would have been equal to, or greater than, any prior agreement reached for the extension of sewer services in similar circumstances. We do not read the language of N.C.G.S. § 160A-47.1 in relative terms. The plain language of N.C.G.S. § 160A-47.1 requires 180 days notice of *any* new ordinance or policy that diminishes Respondent's financial participation. We believe any ordinance or policy that reduces Respondent's financial participation below one hundred percent constitutes a reduction, and would there- fore require 180 days notice as mandated in N.C.G.S. § 160A-47.1. However, we do not need to make a holding on this issue because we hold that Respondent's actions were consistent with its existing policy.

Pursuant to its existing policy, Respondent was not required to pay to extend sewer service to Petitioners. According to Respondent's policy, "[Respondent] shall be entitled to consider and implement one of the following options[:]" either (1), deny a petition outright, or (2), negotiate a mutually acceptable cost-sharing agree- ment with any petitioner. Though Respondent's mass mailing of the form agreement did not invite counteroffers, nothing in the relevant policy indicated that Respondent was required to consider any counteroffers. Respondent's offer to cover fifty percent of the costs of expedited extension of sewer service to any Petitioner appears to have been the best offer Respondent was willing to extend. There is no evidence that Petitioners tested this assumption by attempting to negotiate a better deal for themselves. However, even assuming Petitioners had made that attempt, the policy in effect allowed Respondent to reject any counteroffer that was not acceptable, just

as that same policy allowed Petitioners to reject Respondent's offer should Petitioners not find it acceptable, and settle for free connection to Respondent's sewer system within five years rather than sharing the costs and insuring connection within two years. Further, there is nothing in Respondent's policy that would prevent a fourteen-day deadline requirement as part of an agreement Respondent could find acceptable. We hold Respondent's actions were consistent with its existing policy. To the extent the trial court's orders granted summary judgment in favor of Petitioners on this issue, the orders are reversed and remanded to the trial court with direction to enter summary judgment in favor of Respondent on this issue.

Having reviewed the record in this matter, we hold that summary judgment should have been granted in favor of Respondent on all issues brought forward on appeal. We remand to the trial court for further action consistent with this opinion.

Affirmed in part, reversed and remanded in part.

Judges GEER and STROUD concur.